South Union Township Sewage Authority and Township of South Union, Appellants, *v.* Victor Kozares, Harry B. Moats, Ewing Newcomer, Michael Janosick, Earl George, James E. Hayden, Dennis Cropp, Frank Lechnar, Fred Matelli, William Morganosky, Wendell Goodwin, Lloyd Hunter, Carl Petno and John Cipoletti, Appellees.

Argued January 9, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Victor K. Lynch,* with him *Joseph P. Matuschak,* for appellants.

*A. J. Kuzdenyi,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., May 30, 1974:

This is an appeal from a final decree of the Court of Common Pleas of Fayette County which dismissed exceptions filed by South Union Township Sewage Authority (Authority) and the Township of South Union (Township) to a decree nisi enjoining Appellants from making or enforcing a $10.00 front-foot sewer assessment, and further ordered the Authority to submit a revised sewer assessment schedule for further review by the court.

In 1962, after it had been cited by the Commonwealth of Pennsylvania for inadequate sewage facilities, the Township organized the Authority pursuant to the Municipality Authorities Act of 1945[1] for the purpose of constructing and operating a new sewer system to serve the Township. Work begun on the project in 1971, bearing an estimated completion cost of $6,900,-000.00. Of this amount, the Authority received grants from federal and state agencies totalling $2,054,380.00 (which were invested to earn $110,620.00 during the period of construction). The remaining construction cost was financed by the issuance of a series of short and long term revenue bonds totalling $4,735,000.00. To

---

[1] Act of May 2, 1945, P. L. 382, *as amended,* 53 P.S. §301 et seq.

amortize these obligations, the Authority set a tap-in fee of $300.00 for single residences,[2] a $10.77 monthly service charge or rental,[3] and a $10.00 front-foot assessment. The front-foot assessment, which is the only rate here in dispute, was calculated by dividing the total presently assessable front-footage abutting the sewer laterals (190,000 feet) by the estimated revenue to be raised by this method ($1,900,000.00). To enforce payment of these rates the Township enacted Ordinance No. 66 on June 14, 1971, which required property owners to tap into the sewer system within sixty days of notice, or subject themselves to a fine of $50.00 per day for noncompliance.

The instant controversy erupted on April 27, 1973, when appellees (hereinafter "plaintiffs"), on behalf of all residents and citizens of the Township, filed a "Petition for Preliminary Injunction"[4] in the Court of Common Pleas of Fayette County, sitting in equity. The petition alleged, *inter alia*, that the tap-in, front-foot and monthly service fees described above were excessive and impliedly unreasonable, and prayed that the Authority be enjoined from collecting these fees, and that Ordinance No. 66 be set aside as unconstitutional. On the

---

[2] The tap-in fees were calculated to produce $864,000.00. This was arrived at by multiplying the $300.00 one-time fee by 2,880 "equivalent units" to be serviced by the project. An equivalent unit is equal to the sewage contributed by 3.4 persons or 5,000 gallons per month. These tap-in fees together with the front-foot assessments discussed *infra* were allocated to amortize a $1,935,000.00 bond due in 1977, with a 30% delinquency factor.

[3] The monthly charge was estimated to yield $368,240.00 annually, again based on 2,880 equivalent units. This revenue was allocated to annual interest costs, maintenance, rental payments for the use of the Uniontown treatment plan, and a delinquency contingency.

[4] Neither the record certified to this Court nor the docket entries of the court below indicate whether or not a complaint in equity or at law was ever filed by plaintiffs.

basis of this petition, Judge FEIGUS of the court below entered a rule on the Authority and Township (hereinafter referred to collectively as "defendants") to show cause why a preliminary injunction should not be granted. He further directed the defendants to file an answer within ten days, and set May 2, 1973, as the hearing date on the petition. At this hearing, the defendants objected to the Court's assumption of equity jurisdiction on the issue of the reasonableness of the sewer rates, but stipulated to a twenty-day moratorium on enforcement of the tap-in ordinance if plaintiffs would withdraw their equity action and proceed on the law side.

Notwithstanding this apparently acceptable agreement, the plaintiffs filed a second "Petition for a Preliminary Injunction" with the same court on June 4, 1973, containing essentially the same averments and prayer as were asserted in the first petition. The record again does not tell us whether a rule was served on defendants or whether a hearing was held on the merits of this second petition. On June 4, 1973, Judge FEIGUS granted a preliminary injunction restraining defendants from enforcing Ordinance No. 66, and approved a $1,000.00 injunction bond filed by plaintiffs. The court also appointed, over the objection of defendants, an independent engineering firm to assist the court in determining the reasonableness of the present rates and recommend alternative rate structures.

Judge FEIGUS held hearings as he sat as chancellor on June 1, June 8, and June 20, 1973. He thereafter filed an adjudication and decree nisi on July 10, 1973, concluding as a matter of law that the $10.00 per front-foot assessment "is unreasonable and inequitable and confiscatory as it applied to substandard housing units and vacant lots in the area to be served, as well as to assessed properties in rural areas of the township, which together comprise a substantial portion of the proper-

ties serviced." No findings or conclusions of law were made relative to the reasonableness of the $300.00 tap-in fee or the $10.77 monthly service charges established by the Authority. The defendants, however, were enjoined from collecting or enforcing any of the above fees or rates, and the Authority was directed to submit a revised schedule of fees within thirty days for approval by the court en banc. From the final decree of the court en banc overruling its exceptions and incorporating the decree nisi of the chancellor with modifications,[5] defendants have appealed to this Court.

The dispositive issue presented by this appeal is whether a court of equity has jurisdiction to consider the reasonableness of sewer rates and assessments established by a municipal sewer authority pursuant to the Municipality Authorities Act of 1945. The defendants also challenge the power of the court below to enjoin the collection and enforcement of rates fixed by a designated authority in the absence of a clear showing that they are unreasonable, or were established fraudulently, capriciously or in bad faith.

The first issue was squarely decided in *Calabrese v. Collier Township Municipal Authority*, 430 Pa. 289, 240 A. 2d 544 (1968). Justice (now Chief Justice) JONES, writing for our Supreme Court, there stated with equal applicability to this appeal:

"The Authority was created under the provisions of the Municipality Authorities Act of 1945 (Act of May 2, 1945, P. L. 382, §1 et seq., as amended, 53 P.S. §301). Section 4 B(h) of that statute (as amended, 53 P.S. §306) which gives an Authority certain rights and powers, including the right to 'fix, alter, charge

---

[5] The final decree, entered July 27, 1973, only enjoined the Authority from making or enforcing the front-foot assessment. The defendants were free to collect the tap-in and service fees paid voluntarily, but could not compel payments through enforcement of Ordinance No. 66.

and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, the payment of the principal of and interest on its obligations, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations, or with the municipality incorporating or municipalities which are members of said Authority or with any municipality served or to be served by said Authority, and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served.'

"Section 4 B(h) further provides that any person who challenges the reasonableness or the uniformity of any rate fixed by an Authority may bring suit against the Authority in the court of common pleas of the county, inter alia, wherein the project is located and that the 'court of common pleas shall have *exclusive* jurisdiction to determine all such questions involving rates or service.' (Emphasis added).

"Do the provisions of this statute furnish such an adequate remedy at law as precludes equity from entertaining jurisdiction in a matter involving the reasonableness and uniformity of rates charged by an Authority? If they do, the court below should not have entertained jurisdiction.

. . . .

"The statute provides an *exclusive* remedy for passing upon the reasonableness of the rates of a municipal authority by a proceeding before a tribunal to which it has given *exclusive* jurisdiction to determine such questions. Such tribunal is not a court of common pleas sitting as a chancery court, as appellees urge, but

a common law court of common pleas. There is neither allegation nor proof that the legislative or statutory remedy is inadequate and, under such circumstances, the court below sitting in equity had no jurisdiction to entertain this question. Despite the Authority's agreement to the contrary in the court below, jurisdiction did not vest in the court below; we must determine this question adversely to appellees." 430 Pa. at 293, 294, 297, 240 A. 2d at 546, 547, 548. (Footnotes omitted, emphasis original). *See also Northvue Water Company, Inc. v. Municipal Water & Sewer Authority of Center Township*, 7 Pa. Commonwealth Ct. 141, 298 A. 2d 677 (1972).

Having determined that the court below sitting in equity was without jurisdiction to determine the reasonableness of the rates established by the Authority, we cannot here reach the merits of the other issues raised by Appellants. We feel constrained, however, to comment upon the quantum and genre of evidence presented in the court below, given the extent of the record compiled below and the obvious ruinous effect of a prolongation of this litigation upon the Authority's ability to meet its indenture obligations.

Three witnesses testified in the hearings before the chancellor. The first of these was the Authority's engineer who had participated in the original rate-making process. His testimony was generally historical as he explained the origin of the project, its financing, and its anticipated operation and maintenance. As could be expected, he testified that the rates were reasonable. The second witness was a resident of the Township whose property abutted the new sewer. He did not address himself to the reasonableness of the rates, but rather he objected to the location of the sewer which made it difficult for him to tap-in. At this point, plaintiffs rested their case and defenedants moved for a nonsuit which was overruled. The last witness

was the engineer appointed by the court. Without considering the propriety of this appointment were the court sitting at law,[6] his testimony was unequivocal that the tap-in and monthly service fees were reasonable. As to the $10.00 per front-foot assessment, his testimony—based on a casual drive through the communities—was that the benefits conferred method would be a more equitable assessment method due to the divergent value and frontage of the properties abutting the sewer. He recognized, however, that the $10.00 front-foot fee was reasonable, and conceded that he would only recommend the benefits conferred method if it raised the same amount of revenue as the front-foot assessment.

Given this state of the record, we would have to say that the court misconstrued the scope of its authority, even were it sitting at law, by striking down the front-foot assessment as unreasonable. Rate-making is exclusively a function of the Authority. Section 4B(h) of the Municipality Authorities Act of 1945, 53 P.S. §306 B(h). The Court of Common Pleas' duty was to determine the uniformity and reasonableness of the rates established by the Authority, not whether it would choose a different method of establishing reasonable and uniform rates. "[C]ourts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of

---

[6] *See Wilkinsburg Penn Joint Water Authority v. Churchill Borough,* 417 Pa. 93, 207 A. 2d 905 (1965).

whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion." *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 573, 109 A. 2d 331, 335 (1954) ; *see also Glen Riddle Park, Inc. v. Middletown Township and Middletown Sewer Authority,* 11 Pa. Commonwealth Ct. 574, 314 A. 2d 524 (1974).

The plaintiffs herein had a heavy burden of proving a manifest abuse of discretion by the Authority in establishing the $10.00 per front-foot assessment. *Turley v. North Huntingdon Township Municipal Authority,* 5 Pa. Commonwealth Ct. 116, 289 A. 2d 509 (1972). It is evident from a reading of the present record that this burden has not been approached.

Based upon the above discussion, the final decree of the Court of Common Pleas of Fayette County dated July 27, 1973, and the decree nisi dated July 10, 1973, are reversed, and Plaintiffs' equity action is dismissed. Costs of appeal on Plaintiffs in the court below.