## Comerford v. Factoryville Borough

*Peter G. Loftus*, for plaintiffs.
*James E. O'Connell* and *George Clark, Jr.*, for defendants.

GARDNER, *P. J.*, October 11, 1976—

## I. STATEMENT OF THE ISSUES

1. Is a municipal authority required to engage in competitive bidding for engineering services?

2. Was the Act of June 21, 1957, P.L. 392, 65 P.S. §251, et seq., violated in the instant case, and, if so, what is the effect of such violation on the actions of Factoryville Sewer Authority?

3. Were the actions of Factoryville Sewer Authority concerning which plaintiffs complain, arbitrary, capricious and unreasonable?

## II. STATEMENT OF FACTS

The court finds, on the basis of a hearing held on May 10, 1976, the testimony and other evidence, including copies of minutes of the Council of the Borough of Factoryville and Board of Factoryville Sewer Authority, the following facts:

1. Factoryville Sewer Authority, a municipal authority, was formed by action of the Council of the Borough of Factoryville in 1969.

2. In 1971, Factoryville Borough was ordered by the Department of Environmental Resources of the

Commonwealth of Pennsylvania to submit plans for a sewage treatment plant for the said Borough of Factoryville, and failure of the borough to comply resulted in a mandamus action by the said Department of Environmental Resources instituted in the Commonwealth Court, resulting in an order of that court in April 1973 directing preparation and submission of such plans to the department. On May 23, 1973, a representative of the Department of Environmental Resources was present at a meeting of Factoryville Sewer Authority and recommended that the authority employ an engineer, a solicitor, and engage bond counsel.

3. On May 30, 1973, the authority employed a solicitor, and on June 6, 1973, June 20, 1973, and June 28, 1973, the authority interviewed, respectively, the following engineering firms: Milnes Engineering, Northeastern Engineering, and Bellante and Clauss.

4. The negotiations with the engineering firms resulted in acceptance, by the authority, of the proposal of Northeastern Engineering Company, Inc., and the entry into a contract pertaining to such service on January 4, 1974.

5. One of the individual plaintiffs, John Austin, was a member of the authority and attended meetings of the authority through the meeting held July 5, 1973, the same including meetings in which negotiations with engineering firms took place.

6. Commencing in December 1973 and continuing through February 1976, except for a regular meeting held July 17, 1974, the authority held no meeting, regular or special, at which at least one of the individual plaintiffs failed to attend. At the meeting of January 4, 1974, the individual plaintiffs, Judith A. Comerford, Gladys Lewis, and Hattie Bowman attended.

7.  The dates of regular meetings of the authority for the year 1975 were advertised in the Scranton Times in its issue of January 2, 1975.

8.  At a regular meeting of the authority on November 19, 1975, the contract of the authority with Northeastern Engineering Company, Inc., dated January 4, 1974 was ratified.

9.  Costs incurred by the authority for engineering services to Northeastern Engineering Company, Inc. were paid by Factoryville Borough. In addition thereto, at a meeting held on April 10, 1974, a bill of $2,500 presented by Bellante and Clauss, Inc., for engineering services pursuant to the 1967 contract was ordered paid, the resolution of payment directing the secretary of the council to correspond with Bellante and Clauss to the effect that any further obligation of the borough on account of the said contract would cease upon payment of the bill. Correspondence noted at the meeting of May 8, 1974, of the said council indicated receipt by Bellante and Clauss of the payment of $2,500.

### III. DISCUSSION[1] AND CONCLUSIONS
### OF LAW
### FIRST ISSUE

Plaintiffs correctly contend that the powers of a municipal authority are exercisable only in a manner provided by statute and are also correct in the assertion that the statutory provision pertaining to

---

1.  The instant matter has had a tortured procedural history. The original complaint was filed in March of 1974. To this complaint, defendants filed preliminary objections, raising, inter alia, a question of this court's jurisdiction, as a result of which this court certified the matter to the Commonwealth Court, an action with which the Commonwealth Court disagreed. Upon re-transfer to this court, the preliminary objections were determined, pursuant to which an amended complaint was filed in June 1975. Defendants then moved for sum-

contracts by such an authority, Act of May 2, 1945, P.L. 382, sec. 10, as amended and supplemented, 53 P.S. §312, contains no exception for professional services.

Defendants urge us to accept the interpretation of a similar provision of the Public School Code, Act of March 10, 1949, P.L. 30, art. VII, sec. 751, as amended and supplemented, 24 P.S. §7-751, and in particular the words "work of any nature" as set forth in Eliason v. School District of Springfield Township, 54 D. & C. 2d 52 (Delaware County, 1970), to the effect that the same does not include professional services. Eliason cited Stratton v. Allegheny County, 245 Pa. 519, 91 Atl. 894 (1914), wherein a more sweeping statute relating to municipal contracts was held not applicable to professional engagements.

We are persuaded by the Court of Common Pleas of Delaware County in Eliason.

The relationship of private individuals to a professional is one based on trust and confidence, as well as regard for ability and dedication to the best interests of the employing client. Such considerations are not capable of specifications and are not advanced by the bidding process. There is no valid argument which occurs to us why the same thoughts do not hold true for the same relationships when a municipal authority is involved.

## SECOND ISSUE

We doubt that plaintiffs have sustained their burden with regard to this allegation. See Pusey v.

---

mary judgment, which was denied by this court in January 1976. Trial, after a continuance granted by agreement of counsel, was finally conducted on May 10, 1976. We are not proud of this account, in view of the inflationary pressures which have skyrocketed costs in the conduct of municipal projects such as involved here.

Wright, 31 Pa. 387 (1858), which establishes that the rules pertaining to burden of proof in equity are the same as at law. Also see A & J Solomon Wrecking Co. v. Raymond Colliery Co., 70 Lack. Jur. 133, affirmed 437 Pa. 342, 263 A. 2d 743 (1970), a plaintiff in equity has the burden to establish the case with preciseness or clarity and by the fair weight and preponderance of the evidence.

Plaintiffs produced two witnesses on the subject: Donald Syren, a member of Factoryville Sewer Authority for approximately one year prior to the May 10, 1976 hearing (but not at the time of the action complained of, January 1974), and Earl Huff, a former authority member, both of whose testimony with regard to whether notices of meetings were given in accordance with the Act of June 21, 1957, P.L. 392, 65 P.S. §251 et seq., was summed up in the words of Mr. Huff: "I don't know."

The act itself provides for two acceptable methods of public notice: one newspaper insertion or posting a copy of the notice at the office of the body holding the meeting or at the public building at which the meeting is to be held. The second method of notice was the subject of no testimony whatsoever in the instant matter, and the first method was restricted to the testimony of Messrs. Syren and Huff, as on cross-examination, together with whatever inference can be drawn from the lack of production of proofs of newspaper publication as a result of a subpoena served but two days before the hearing.

The act itself is devoid of any sanction of the nature asserted by plaintiffs, that the action of the authority taken on January 4, 1974, contracting for engineering services, was void. We thought, at the time of its enactment, and still believe, that the purpose of the legislation was to facilitate coverage

of public meetings by the news media. It is interesting to note that when the legislature decided to open the doors of public meetings and let in the "sunshine," it knew how to do it.[2]

However, even if it is conceded that the action of Factoryville Sewer Authority taken January 4, 1974, was without compliance with the "Right to Know" legislation, supra, such is of no importance because of the ratification resolution enacted by the authority at its regular meeting held November 19, 1975 (a meeting held pursuant to a proper notice inserted in the Scranton Times as indicated by the seventh finding of fact). This resolution, in part, was as follows:

"It is hereby resolved by the Factoryville Sewer Authority that the actions of the Sewer Authority taken at the special meeting of January 4, 1974, and particularly the approval and execution by the Authority of a contract for engineering services with Northeastern Engineering Company, Inc., are hereby ratified and approved."

No one has suggested that the employment of an engineer is or was beyond the scope of the authority's powers. We find such to be a proper subject for ratification. Further, the fact that the ratification action was taken subsequent to the commencement of this litigation is unimportant: Mateer v. Swissvale Borough, 335 Pa. 345, 8 A. 2d 167 (1939).

---

2. The Act of July 19, 1974, P.L. 486 (No. 175), sec. 2, 65 P.S. §262, the "Open Meeting Law," provides: "The meetings or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times. No formal action shall be valid unless such formal action is taken during a public meeting."

## THIRD ISSUE

On this issue, plaintiffs' allegations as set forth in the complaint are strong and stern. Words such as "unwarranted, unreasonable, arbitrary and capricious" are used with such clarity and apparent determination that we were not prepared for the anti-climactic nature of the trial.

Plaintiffs' counsel argues that failure to select, on January 4, 1974, Bellante and Clauss, Inc. as authority engineer was "arbitrary and capricious" because of the work that Bellante and Clauss, Inc. had done for Factoryville Borough in 1967 in preparing a feasibility study. Intertwined with this argument is one concerning the real gravamen of this litigation, that Factoryville Borough cannot "afford" a sewage treatment system.

Certain principles with respect to judicial inquiry into administrative matters were set forth in Weber v. Philadelphia, 437 Pa. 179, 262 A. 2d 297 (1970), and they are, in part, as follows:

"First, it is to be presumed that municipal officers properly act for the public good . . . Second, courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion . . . Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the wisdom of municipal actions and judicial discretion should not be substituted for administrative discretion."

Factoryville Sewer Authority has incurred a large expense for engineering services. Is this not understandable in view of the fact that the project is estimated to involve at least $2,600,000? Even if less expensive engineering could have been ob-

tained (although there is no competent evidence which indicates this), or even if it is unwise to enter upon the project (a decision which will be directly affected by the availability of governmental grants), the actions taken by this authority do not justify judicial intervention.

We feel that plaintiffs have done nothing more productive than to "arbitrarily" decide to act as authority members themselves[3] in determining, first, that the sewage project is not feasible, and then labelling contrary actions by the authority (and after the fact of such actions) as "arbitrary and capricious." However, to label the actions of well-meaning officials as capricious or arbitrary does not make them so: Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446, 160 A. 2d 539 (1960).

The most that plaintiffs proved was (1) that there was a possible failure by the authority to make a more complete determination of whether the work to be undertaken by Northeastern Engineering Company, Inc. was a partial duplication of that

---

3. We feel it important to emphasize that plaintiff, John W. Austin, was a member of the Factoryville Sewer Authority, that membership extending until after this suit, which named Mr. Austin as one of plaintiffs, was filed. The record is devoid of any resignation by Mr. Austin, although it appears as if his membership was terminated after notice sent to him by the authority or the council upon the institution of the litigation. It has previously been noted that he attended meetings of the authority during at least the initial stages of some of the actions of which he became critical as a party-plaintiff in the instant matter. Our review of the minutes of the authority indicate his presence at seven meetings of the authority between May 16, 1973 and July 5, 1973.

Our further investigation of the minutes of Factoryville Sewer Authority indicates that plaintiff, Gladys Lewis, attended 18 meetings between December 27, 1973, and February 18, 1974, and, during this same period, plaintiffs, Judith A. Comerford and Hattie Bowman, attended 14 meetings.

We became so impressed by the devotion of the individual plaintiffs to the workings of the authority that we found it difficult to believe that the "Right to Know" Act, supra, was needed for their protection.

previously performed by Bellante and Clauss, Inc., and (2) that the engineering might have been able to be acquired at less expense. Even if we were to agree with these contentions and would concur with plaintiffs that wiser courses of action were open to the authority, this still would not be sufficient ground for interference; such a course of action would be "substituting judicial discretion for administrative discretion.": South Union Township Sewage Authority v. Kozares, 13 Pa. Commonwealth Ct. 325, 320 A. 2d 381 (1974), citing Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 109 A. 2d 331 (1954). The Supreme Court of Pennsylvania, in Zebra v. Pittsburgh School District, 449 Pa. 432, 296 A. 2d 748 (1972), refused to allow the courts to function as "super school boards" in interfering with discretionary exercises by such boards. We will, by adopting the analogy, refuse to act as a super municipal authority. We would commend this principle of representative government to plaintiffs.

The burden of proving a manifest abuse of discretion by the authority was that of plaintiffs. It was a heavy burden, and plaintiffs have failed.

In conclusion, we point out that the discussion of the issues raised by the evidence taken on May 10, 1976, the briefs, and the arguments of counsel pertain to the actions of Factoryville Sewer Authority because, notwithstanding the fact that Factoryville Borough, Factoryville Borough Council and four members of Factoryville Borough Council are joined as defendants, not one remnant of proof supports the allegations of plaintiffs.

## CONCLUSIONS OF LAW

1. Factoryville Sewer Authority was not required to engage in competitive bidding in order to legally contract for engineering services.

2. The actions of Factoryville Sewer Authority, of which complaint has been made in the instant matter, were not proven to have been fraudulent, collusive, motivated by bad faith, arbitrary, capricious or an abuse of discretion.

3. The contract between Factoryville Sewer Authority and Northeastern Engineering Company, Inc., dated January 4, 1974, was within the powers of the said authority and is the obligation of the parties to the said contract in accordance with the provisions thereof.

4. Plaintiffs have failed in their burden of proof with respect to all defendants.

## DECREE NISI

And now, October 11, 1976, based upon the findings of fact and conclusions of law as set forth in the foregoing adjudication in the above-captioned matter, it is decreed that a judgment be and is hereby entered for defendants.

Costs are imposed upon plaintiffs.