Port Authority of Allegheny County, Appellant *v.* Anna Scott and Maryam Razzaq, Appellees.

The Port Authority of Allegheny County, Appellant *v.* Anna Scott and Maryam Razzaq, Appellees.

632

Argued September 16, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR. and CRAIG.

Robert M. Brown, with him Dennis L. Veraldi and Jeffrey M. Johnston, Ruffin, Hazlett, Snyder, Brown & Stabile, for appellant.

James W. Carroll, with him Catherine T. Martin, for appellees.

Marilyn Skolnick, with her Richard Meritzer and Kathryn Dolinar, for Amicus Curiae, Transit Advocates and Patrons.

OPINION BY JUDGE CRAIG, November 25, 1981:

These appeals are from orders of the Court of Common Pleas of Allegheny County in a statutory action commenced by two mass transit patrons as plaintiffs against the Port Authority of Allegheny County, which operates the mass transit bus, trolley and train system for that region. Plaintiffs filed the action October 3, 1980, under the Second Class County Port Authority Act[1] to challenge a fare increase effective November 2, 1980 which, with various subordinate provisions detailed in the opinion below, raised the base central zone fare to 75 cents, the base fare for the other 13 zones to 65 cents, and the transfer charge from 10 cents to 25 cents. Earlier, in March of 1980,

---

[1] Act of April 6, 1956, P.L. (1955) 1414, as amended, 55 P.S. §551 et seq.

the authority had increased the basic fare from 50 cents to 60 cents.

Judge SILVESTRI SILVESTRI conducted extensive hearings over the period March 2, 1981 through March 11, 1981. At trial, the plaintiffs presented expert testimony supporting a 60-cent base fare as a reasonable level . On May 26 following, the hearing judge issued a lengthy opinion and detailed order which reduced the single-zone base fare to 50 cents for all zones except the downtown central zone, which was set at 60 cents, established a two-zone transfer rate of 10 cents, realigned the zone boundaries extensively, established zone fare increments of 20 cents, added a surcharge of 25 cents upon each express bus fare, eliminated all multi-trip permits and other passes, required all fares to be in cash and ordered various other fare provisions concerning special services (stadium buses, shuttles, commuter train, etc.) and special fare classes for senior citizens, handicapped persons and children. The order required the authority to realign the zones within two weeks and to make the changed fares effective within three weeks, by June 15, 1981. Because the order also eliminated all tickets, passes and permits on that latter date, holders of such discount documents were given the remedy of a proportionate refund.

The authority appealed that initial order, which was final in form, and ultimately also filed precautionary exceptions to it in the common pleas court. On application to this court after a stay was refused below, we granted a stay pending appeal. When the plaintiffs appealed that stay order, the Supreme Court left the stay in effect and ordered that the common pleas court dispose of the exceptions expeditiously, not later than September 1. From a dismissal of all of the authority's exceptions by the common pleas court en banc, the authority entered the second of the two appeals now before us.

Because all agree that this case presents us with a question of first impression concerning the statutory standard which governs the common pleas court's review of the authority's action in this situation, we set forth in full Section 3(b)(9) of the Second Class County Port Authority Act, 55 P.S. §553(b)(9), which reads:

> (b) Each authority is hereby granted . . . , the following rights or powers:
>
> . . . .
>
> (9) To fix, alter, charge and collect fares, rates, rentals and other charges for its facilities by zones or otherwise at reasonable rates to be determined exclusively by it, subject to appeal, as hereinafter provided, for the purpose of providing for the payment of the expenses of the authority, the acquisition, constructions, improvement, repair, maintenance and operation of its facilities and properties, the payment of the principal and interest on its obligations, and to comply fully with the terms and provisions of any agreements made with the purchasers or holders of any such obligations. The authority shall determine by itself exclusively, the facilities to be operated by it and the services to be available to the public. Any person questioning the reasonableness of any rate or services fixed by an authority may bring suit against the authority in the court of common pleas of the county incorporating the authority. The court of common pleas shall have exclusive jurisdiction to determine the reasonableness of fares, rates and other charges or services fixed, altered, charged or collected by an authority. The court shall make such order as to fares, rates and other charges or services as to it shall be just and proper. No suit or appeal shall act as a

supersedeas. The court shall give priority to all such suits or appeals and no bond shall be required of any party instituting such action or appeal under the provisions of this section.

We must interpret this subsection in order to resolve the threshold issues concerning the standard of common pleas court review and the scope of relief which that court can afford.

## Review Standards, Burden of Proof, and Relief

### Standard of Review by Common Pleas Court

The common pleas court concluded that it was not limited to deciding if the authority had abused its discretion but held that it was empowered to review the reasonableness of the authority's rates free of any such limitation; the hearing judge announced at the outset of trial that he would not receive any testimony with respect to abuse of discretion. The final opinion concluded that "[t]he only matters before the trial court and this court [en banc] are the reasonableness of the fares exclusively determined by PAT on September 12, 1980, effective November 2, 1980, and the zone structure upon which the fare was based."

Following the sound approach that the reasonableness of fares cannot be determined separately from the reasonableness of the various expenses to be paid out of the fare revenue, as well as from federal, state and local subsidies, the court's opinion discussed numerous operational matters, such as spare buses, charter service, bus service calls, company cars, the waterways division, travel expenses, charity solicitations, standby operators and the like. However, the court's order revised only the fare structure and did not mandate any operational changes.

Recognizing that the Second Class County Port Authority Act review provision has not been construed, whereas the Municipality Authorities Act re-

view provision[2] has been interpreted at the appellate level as limiting the common pleas court to determining if there has been an abuse of discretion,[3] the trial court and the parties have here correctly focused upon a comparison of the wording of those two provisions, to determine if they are sufficiently similar in substance as to warrant following the established interpretation of the latter act to construe the former one.

We must explore the same comparison. As noted above, the Second Class County Port Authority Act review provision states:

> Any person *questioning the reasonableness* of any rate or services fixed by an authority may bring suit against the authority in the court of common pleas of the county incorporating the authority. The court of common pleas shall have exclusive jurisdiction *to determine the reasonableness of fares,* rates and other charges or services fixed, altered, charged or collected by an authority. (Emphasis supplied.)

The trial court here correctly regarded the next sentence of the subsection, which empowers the court to "make such order as to fares, rates and other charges or services as to it shall be just and proper," as describing the scope of *relief* to be granted (as discussed below) *after* the court has reached its determination as to the authority's action. Thus the preceding two sentences, as quoted above, are the ones dealing with the standard of review which governs in reaching the decision as to whether or not relief should be granted.

The correct comparison is with the parallel two sentences in Section 4(B)(h) of the Municipality Authorities Act, 53 P.S. §306(b), which read:

> Any person *questioning the reasonableness* or uniformity of any rate fixed by any Authority

---

[2] Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §301 *et seq.*

[3] See decisions cited in text below.

or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the project is located, or if the project is located in more than one county then in the court of common pleas of the county wherein the principal office of the project is located. The court of common pleas shall have exclusive jurisdiction *to determine all such questions* involving rates or services. (Emphasis supplied.)

Because the phrase "all *such* questions" at the end of this provision clearly refers to the "questioning" of "reasonableness" stated in the sentence immediately preceding, the operative content of the Municipality Authorities Act is obviously the same as that of the Second Class County Port Authority Act. The latter act, the one now before us, describes the common pleas court review power as "exclusive jurisdiction to determine the reasonableness of fares," and the former act, heretofore interpreted, likewise gives the common pleas court exclusive jurisdiction to determine "all such questions," plainly referring to questions of "the reasonableness" of a rate, as stated in the same passage. In view of the actual equivalence of the two provisions, there is no basis for construing the second class county statute differently from the Municipality Authorities Act. In *Turley v. North Huntingdon Township Municipality Authority,* 5 Pa. Commonwealth Ct. 116, 121, 289 A.2d 509, 512 (1972) we followed the Supreme Court's principles in describing the issue as involving "a manifest abuse of discretion on the part of the Authority." In *Patton-Ferguson Joint Authority v. Hawbaker,* 14 Pa. Commonwealth Ct. 402, 406, 322 A.2d 783, 786 (1974) we repeated that the attacker had to prove "that the Authority had abused its discretion by establishing a rate system which was

either unreasonable or lacking in uniformity. *Vener v. Cranberry Township Municipal Sewer and Water Authority,* 5 Pa. Commonwealth Ct. 123, 289 A.2d 506 (1972).'' We reiterated the same standard in *South Union Township Sewage Authority v. Kozares,* 13 Pa. Commonwealth Ct. 325, 332, 320 A.2d 381, 385 (1974) and in *Brandywine Homes v. Caln Township Municipal Authority,* 19 Pa. Commonwealth Ct. 193, 200, 339 A.2d 145, 148 (1975).

In these cases we followed the Supreme Court's application of the abuse-of-discretion standard to the Municipality Authorities Act in *Hyam v. Upper Montgomery Joint Authority,* 399 Pa. 446, 455-56, 160 A.2d 539, 545 (1960), following the principles stated in *Blumenschein v. Housing Authority of Pittsburgh,* 379 Pa. 566, 572, 109 A.2d 331, 334 (1954).[4]

Also to be noted is that the Supreme Court applied the *Hyam* and *Blumenschein* standards to an equity case—albeit *not* a statutory action—in which development actions by this same authority were reviewed, *Flaherty v. Port Authority of Allegheny County,* 450 Pa. 509, 516-17, 299 A.2d 613, 617-18 (1973).

---

[4] The familiar *Blumenschein* doctrine language reads:

[C]ourts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion. (Emphasis in original.)

379 Pa. at 573, 109 A.2d at 335.

*Yezioro v. North Fayette County Municipal Authority*, 193 Pa. Superior Ct. 271, 164 A.2d 129 (1960) does not support any different interpretation of the Municipality Authorities Act. As the trial court here correctly pointed out, *Yezioro* emphasized that the statute, in initially stating that the authority has the power to determine rates "exclusively," does not imply by the use of that adverb that the common pleas court is barred from reviewing the determination. However, with respect to the scope of the judicial review power, *Yezioro* went no further than to approach the matter alternatively as follows:

> From all the evidence the court properly concluded that the proposed abandonment of service was unreasonable. Even if the abandonment were principally a matter of discretion, the facts and circumstances of this case demonstrate that the cessation of service would amount to an *abuse of discretion* and result from an arbitrary execution of the authority's principal duty and function. (Emphasis supplied.)

193 Pa. Superior Ct. at 286, 164 A.2d at 137.

*Municipal Authority of the Town of Bloomsburg v. Bloomsburg Cooperative Canners, Inc.*, 203 Pa. Superior Ct. 393, 199 A.2d 502 (1964), did not examine the scope of review as an issue.

Therefore, because the Municipality Authorities Act, giving the common pleas court exclusive jurisdiction to determine all questions involving the reasonableness of rates, uses essentially the same wording as the statute applicable here employs, in likewise conferring exclusive jurisdiction to determine the reasonableness of fares, the standard of review judicially perceived in the one statute necessarily must be applied to both—that the determination of the specialized public body is subject to being overruled only where an abuse of discretion is established.

## Burden of Proof

At the outset of the hearings, Judge SILVESTRI stated on the record that the burden of proof rested on the plaintiffs. In its final opinion disposing of exceptions, the common pleas court confirmed that the burden of proof rested upon the plaintiffs. Although the initial opinion of the trial court had stated that the burden of proving unreasonableness of the fare increases was upon the plaintiffs "with a like burden on PAT to prove the reasonableness of the fares," the opinion on exceptions subsequently made it clear that the latter reference was to the authority's burden of going forward with the evidence on those matters as to which the plaintiff may have presented substantial evidence, with the burden of persuasion remaining upon the plaintiffs. We agree, of course, with that analysis by the hearing judge. If plaintiffs' contention in their brief constitutes a claim that the trial judge would have been justified in subjecting the authority to the burden of proof, in the sense of the burden of persuasion, we reject that contention.

## Scope of Relief

We have above indicated that the trial court correctly interpreted its relief-granting power, to "make such order as to fares, rates and other charges or services as to it shall be just and proper," as enabling the court to fashion definitive relief according to the merits of the evidence received by it. As the Supreme Court pointed out in *Dooling's Windy Hill v. Zoning Board of Adjustment of Springfield Township*, 371 Pa. 290, 297, 89 A.2d 505, 508 (1952), in interpreting similar language in the former Section 3107 of the First Class Township Code,[5] the power of the common

---

[5] Section 3107 of the Act of June 24, 1931, P.L. 1206, *formerly* 53 P.S. §58107, repealed by Section 1201 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, 53 P.S. §11201.

pleas court to reverse or affirm a zoning decision as to the court "may appear just and proper" conferred power to "dispose of the matter on the merits."

Thus, whether the statutory proceeding be filed under the Second Class Port Authority Act or under the Municipality Authorities Act, pursuant to either the common pleas court is authorized to receive evidence—quite appropriately in view of the fact that a formal record usually does not emerge from the authority's ratemaking process. Then, at least in the case of the Second Class County Port Authority Act, if the rate determination of the authority must be invalidated as an abuse of discretion, the legislature has plainly empowered the court to make an order of its own upon the merits if it does not choose to remand.

Accordingly, the power of the common pleas court here to grant definitive relief cannot be denied, provided that the record contains a basis for finding an abuse of discretion so as to warrant relief.

### Scope of Appellate Review

As the plaintiffs have correctly stated, our scope of review on appeal, where the court below has received the evidence, is limited to considering whether the factual findings are supported by substantial evidence and whether the law was properly applied to the facts. *Department of Transportation v. Volmer,* 41 Pa. Commonwealth Ct. 286, 290, 398 A.2d 1098, 1100 (1979).

### THE FARE STRUCTURE DETERMINATIONS

Therefore, the inquiry to be made by this court, as applied to the pivotal rate structure issue, is clear:

Where transit patrons have proceeded under the Second Class County Port Authority Act to challenge a transit fare increase, is there substantial evidence in the record (1) to sustain

the plaintiffs' burden of establishing that the increased rate was an abuse of the authority's discretion, and (2) to warrant the common pleas court in fixing reduced transit fares, with new zone descriptions, a new transfer charge, elimination of discounts, and other changes?

In this kind of rate review case, where the legislature has accorded the common pleas court a role analogous to that of the Public Utility Commission in utility rate cases, it is fundamental that the record or decision must reveal the analytical process or computation which supports the final rate determination, so that the appellate courts have a basis on which to exercise their reviewing duty. The requirement has been long accepted; the articulation of it has remained steadfast at least since *Scranton-Spring Brook Water Service Co. v. Public Service Commission,* 105 Pa. Superior Ct. 203, 160 A. 230 (1935) where the Superior Court expressed the principles of rate review by the commission as follows:

It is essential that the report of the commission, or the record, in some way disclose precisely the elements involved and the *processes and methods* by which the commission reaches its findings and conclusions on the evidence. (Emphasis supplied.)

105 Pa. Superior Ct. at 210, 160 A. at 233.
After the Superior Court accordingly remanded that case, it again returned upon appeal, so that the Superior Court had occasion to reiterate that, in proceedings involving the reasonableness of rates, the appellate court must be furnished with the data used and the mathematical calculations adopted, not only in establishing the rate base, but also in preparing the resulting rate schedule itself. *Scranton-Spring Brook Water Service Co. v. Public Service Commission,* 119 Pa. Superior Ct. 117, 187 A. 77 (1935).

Although the legislature in this respect may well have placed an unaccustomed responsibility upon the common pleas court as to authority rate cases, we see no other available approach for the proper adjudication of litigation which is a rate determination case in all essentials. This court regularly wrestles with fulsome computations in reviewing utility rate determinations. Moreover, whenever a rate determination is in dispute in an authority case—even though the calculations are usually simpler than in a utility case—we find it necessary to review all of the elements necessary for computing the rate mathematically. See the assessment computation in *South Union Township Sewage Authority,* 13 Pa. Commonwealth Ct. at 327, 320 A.2d at 382.

Indeed, where the entity proposing the rate increase is a public agency, created to achieve public goals not limited to purely economic ones, and is acting with the aid of authorized subsidies from all levels of government, the appropriateness of establishing the error of the public agency by an intelligibly complete analysis or calculation is even more clear than where a private utility corporation is involved.

The only fare computation evidence in the record, in any way resembling the rate computations which we require as essential in utility matters, was in the testimony of plaintiffs' expert witness Tennyson, who presented a pro-forma annual budget for the authority, using base fare calculations at 60 cents and 75 cents alternatively, and using expense figures, some of which he adjusted to reflect the elimination of certain alleged excesses, *e.g.,* reducing expenses in the amount of $297,000 as to rail operating agreements, and by $3,874,124 as to capital account employees.

Thus plaintiffs' expert arrived at a computation supporting a 60-cent base fare for each zone, using a central zone of five-mile radius and other zones of two-mile radius.

## The Ordered 50-cent/60-cent Fare Structure

With the only record computations thus tending to support a straight 60-cent base fare structure, we have searched without success for any elucidation of the various figures in the court's opinion to explain the basis for the new fare structure which the court ordered—a 50-cent single-zone fare for the 13 two-mile zones, with a 60-cent fare for a central zone of six-mile radius.

The thrust of the court's decision appears to be that this basic 50-cent/60-cent fare structure can be achieved (instead of the plaintiffs' 60-cent structure or the authority's 65-cent/75-cent structure) because the authority could and should effect sufficient savings with respect to route and busway efficiency improvement, seasonal services such as those for Christmas and the county fair, standby operators, spare buses, non-revenue vehicles, and as to travel expenses, and also by increasing revenue charges for stadium and shuttle services, as well as so-called "express" services and charter buses.

The trial court opinion certainly makes some useful and illuminating findings with respect to various expenses. As just one example, there was evidence that 1888 hours of drivers' time were devoted to United Way charitable contribution solicitation, with standby operators replacing those drivers; we agree that, although United Way solicitation of employees may be a normal incident of the operation of both private and public entities, an excessive amount may indicate that the authority is providing more standby operators than is warranted.

However, without some reasonably complete calculation of the dollar amount of expenses which should be eliminated and, of equal importance, some indication of the additional revenue totals to be derived through the mandated express bus surcharge of 25

cents, the ordered fare increases for stadium buses, the
elimination of discount passes and permits, or the re-
vised zone circles (with revenues adjusted downward
by any diminution which could result from having
transfers cover two zones instead of one), we are un-
able to perform our review function.

The trial court may well have pursued a rate-com-
puting process in arriving at its fare structure but, if
so, an expression of that process is not available so
that we may discern the connection between the ex-
pense and revenue matters criticized by the court and
the new fare result determined in the order.

An illustration of the approach of the trial court
was as follows (Opinion, pp. 73, 74):

> We have already discussed the numerous areas
> in which economies could and should be under-
> taken. Although there was evidence as to the
> maintenance of buses, trolleys, trolley tracks
> and personnel reductions [footnote omitted],
> there was not sufficient evidence to demonstrate
> the exact amount of hour and dollars which
> could be saved. There was sufficient evidence,
> however, to support a finding that these are
> areas wherein substantial economies could be
> effected.

Accepting the conclusion in the last sentence quoted,
we nevertheless have not been given any finding as to
the amount of the "substantial economies" to be de-
rived in such areas.

The decision appears to rest upon a conclusion
which lumps expense reductions and revenues, as fol-
lows:

> We believe that the restructuring of the
> zones and fares, together with the obvious
> economies, which are attainable, will add up to
> an amount in excess of $5,000,000 and if the
> representatives of the people would re-examine

and restructure PAT the savings in the future years would be greater.

We cannot evaluate such a composite. *See Scranton-Spring Brook,* 105 Pa. Superior Ct. at 210, 160 A. at 233.

Similarly, the trial court's elimination of all passes, permits and quantity discounts is not supported by evidence as to the revenue effect of that move, nor is it discussed in the opinion. Obviously, discounted passes and permits mean lower unit revenues, but they can have a marketing benefit, potentially increasing ridership and maximizing equipment use so that revenues are increased overall.

We therefore must conclude that the record does not contain substantial evidence to support the order.

### The Invalidation of the 75-cent Fare Structure

Moreover, the trial court, in declaring and adhering to the view that evidence on abuse of discretion was not acceptable, made clear that the court's invalidation of the authority's fare increase was not based upon the abuse-of-discretion standard, as we above hold that it must be.

If we were to undertake an independent search to see if the record could support a finding that the authority abused its discretion in setting the 75-cent fare structure, there is the above-mentioned testimony of plainiffs' expert Tennyson, whose evidence supporting the 60-cent fare might suggest that a fare structure up to 25% higher could be an abuse of discretion.

However, plaintiffs now forthrightly acknowledge that Mr. Tennyson's figures should be adjusted upward by $2,972,000 for fuel cost increases, and by $400,000 for the inflation of the cost of purchased goods and services. On the other hand, plaintiffs point out that Mr. Tennyson's pro-forma budget did not take credit for allegedly achievable savings in (1) bus ser-

vice gains related to busways, the stadium, Christmas and the county fair, (2) expenses as to company cars, standby operators and spare buses, (3) capitalization computations, and (4) subsidy and charter revenues, adding up in plaintiffs' view to an offsetting combination of adjustments netting $3.6 million dollars—more than the $3.3 million dollar upward adjustment acknowledged.

Particularly in view of that debatable character of the Tennyson pro-forma budget, we should not usurp the trial court's function by attempting to determine independently whether or not there was an abuse of the authority's discretion.

### Conclusion

In summary, without any computation of rate determinations sufficient to invalidate the authority's increase or support the new structure which would be substituted by the trial court's order, this court has neither the requisites nor the power to construct those computations from scratch.

In essence, the trial court decided that the authority, by cutting expenses and raising certain special fares, can achieve a $5,000,000 improvement in its $113,000,000 annual operating budget (of which approximately $55,000,000 is subsidies) without lowering its actual level of transit service. Hence the trial court ordered that the basic fare be reduced, but without making any finding as to the new revenue totals to be anticipated, apparently on the basis that the authority should be required to cut the coat to fit the cloth which the court has supplied in unspecified quantity.

However healthy it may be to challenge a public agency to do a better job, the law does not allow the courts to take such an approach, essentially executive in its nature rather than judicial. The record and decision here lack the required statement of the financial elements which, at least in general figures, is necessary

to provide a reasonable assurance that the court-mandated revenue, even with reduced expenses (assuming no subsidy increase), would not result in a detrimental deficit.

A court cannot discard a fare-setting action of the authority and substitute an entirely new fare structure by concluding in general terms, as did the court en banc here, as follows:

> If the expenses are unreasonable, as the trial court determined they are in many areas of the transit operation, then it follows that the fares will be unreasonable.

Although that statement may be abstractly true if a fixed level of subsidies is assumed,[6] such a generality is not a reviewable determination in itself.

In comparison with the Public Utility Commission's rate-review powers, which are at least as far-reaching as those of the courts in this case, we could not uphold a PUC refusal of a rate on the basis of general findings that certain present expense totals are unreasonable, without findings as to what the reasonable amounts are in each basic category.

We therefore must vacate the orders of the court below and remand this case for supplemental hearings to receive such evidence as the parties may offer in accordance with the standard of abuse of discretion, and for findings, conclusions and an order based upon the existing record together with any additional evidence received, in accordance with this opinion.

---

[6] As the court en banc below noted, the determination of reasonableness of fares is complicated when significant items are fully or partially subsidized by governmental bodies. For example, even though expenses are cut, various elected officials and the authority would have to decide if a given fare level should be maintained in order to ease the subsidy requirement, i.e., to decide who should benefit from the savings—the transit-riding public or the general taxpayer.

ORDER

Now, November 25, 1981, the order of the Court of Common Pleas of Allegheny County dated May 26, 1981, and its order of August 15, 1981 dismissing exceptions thereto, are vacated, and this case is remanded for findings, conclusion and decision pursuant to the principles stated in the foregoing opinion, after affording opportunity to the parties to present additional evidence in accordance with such principles.

Judge WILLIAMS, JR. concurs in the result only.