Township of Hopewell, Appellant *v.* The Municipal Water Authority of the Borough of Aliquippa, Appellee.

Municipal Water Authority of Aliquippa, Appellant v. Township of Hopewell, Appellee.

Argued October 4, 1983, before President Judge CRUMLISH, JR. and Judges CRAIG, MACPHAIL, DOYLE and BARRY.

*Keith R. McMillen, Duplaga, Tocci, Palmieri & Mc-Millen,* for appellant, Township of Hopewell.

*Clarence D. Neish,* for appellee, Municipal Water Authority of the Borough of Aliquippa.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., April 27, 1983:

Township of Hopewell (Hopewell) and the Municipal Water Authority of the Borough of Aliquippa (Aliquippa Authority) cross-appeal a Beaver County Common Pleas Court order approving a sewer rate increase but postponing the payment thereof. We vacate and remand.

In September, 1980, Aliquippa Authority increased the sewer rate charges for Hopewell users from $11.00 to $28.00 per dwelling unit per quarter and increased its resident users' rates from approximately $10.08 to $11.06. These increases were to become effective on November 1, 1980. On February 25, 1981, Hopewell filed a complaint in the common pleas court seeking a declaratory judgment invalidating the rate increase as those increases relate to the residents of Hopewell. On February 12, 1982, that court invalidated the rate increase from September 25, 1980 to June 1, 1981, but held it to be valid after June 1, 1981. Both parties filed

exceptions and arguments were heard by the common pleas court en banc. That court entered an order approving the sewer rate increase, effective June 1, 1984.[1]

The factual history began on May 12, 1958, when Hopewell Township and Aliquippa Borough entered into an agreement whereby each agreed to allow certain residents of the other to connect to and be served by their respective sewers and sewer treatment plants when such plants began operations.[2] In 1958, Aliquippa Authority sewer system served approximately 550 Hopewell residents, charging a flat rate of $30.00 per Hopewell resident per year. In 1960, the Hopewell Authority sewage treatment plant began operations and served approximately fifty residents of Aliquippa, charging a flat rate of $14.00 per quarter. Subsequently, the respective authorities increased their quarterly charges to their non-resident users. In February of 1980, the Hopewell Authority increased its quarterly charge for both Hopewell and Aliquippa residents from $25.00 to $28.00. In September, 1980, Aliquippa Authority increased its quarterly charges for Hopewell residents from $11.00 to $28.00 while maintaining the $11.00 quarterly charge for Aliquippa residents.[3]

---

[1] On February 25, 1982, Hopewell filed a notice of appeal with this Court. In September of 1982, Hopewell filed a petition to remand to file exceptions nunc pro tunc and Aliquippa Authority filed a motion to quash the appeal. On September 29, 1982, this Court granted Hopewell's petition to remand, and on October 1, 1982, this Court denied Aliquippa Authority's motion to quash.

[2] The common pleas court found that neither party contends that the 1958 agreement is determinative of the issues in this instant case.

[3] Presently, Aliquippa Authority provides sewer services for 4,941 Aliquippa customers and 826 Hopewell customers. Hopewell Authority currently provides sewer services for 3,071 Hopewell customers and 111 Aliquippa customers.

The common pleas Court's judicial review of a rate resolution is limited to a determination of whether there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system. *See Brandywine Homes v. Caln Township Municipal Authority,* 19 Pa. Commonwealth Ct. 193, 200, 339 A.2d 145, 148 (1975). The burden of proving such an abuse of discretion rests upon the party challenging such action. *Id.* at 200, 339 A.2d at 149. Where the court below has received the evidence, our scope of review on appeal is limited to considering whether the factual findings are supported by substantial evidence and whether the law was properly applied to the facts. *Port Authority of Allegheny County v. Scott,* 62 Pa. Commonwealth Ct. 631, 642, 437 A.2d 502, 508 (1981).

Aliquippa Authority's rate-making power is controlled by Section 4B(h) of the Municipal Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §306 B(h), which provides

B. Every Authority is hereby granted . . . the following rights and powers:

(h) To fix, alter, change and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties . . . and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served: Provided, That if the service area includes more than one municipality, the revenues from any project shall not be expended directly or indirectly on any other project, un-

less such expenditures are made for the budget of the entire service area.

The court below referred to Section 4B(h) of the Act to establish that Aliquippa Authority had the exclusive power to increase the rates of Hopewell residents. The trial court interpreted letters from the Department of Environmental Resources (DER) as mandating certain capital improvements to the Aliquippa sewer system and relied on the weight of the testimony in determining the need for improvements. The record reveals the DER letters addressed only capital improvements to the treatment system and sewer studies, which represents a small portion of the proposed capital improvements. Aliquippa Authority's witnesses explained the need for the other improvements and testified that these projects are for the immediate improvement of the system. However, the record also indicates that many of the projects have not been planned or started. In fact, one of Aliquippa Authority's own experts stated that the estimates of the sewage facility replacement costs came from a "very preliminary study." The expert further expressed that the rehabilitation replacement program would be an ongoing project that could take place "over the next 15-20 years." We have held that "the appellate court must be furnished with the data used and the mathematical calculations adopted, not only in establishing the rate base, but also in preparing the resulting rate schedule itself." *Port Authority of Allegheny County*, 62 Pa. Commonwealth Ct. at 643, 437 A.2d at 508. The evidence reveals that the construction plan is speculative and its cost was not available at the time of the rate increase.

Hopewell argues that the trial court committed an error of law by permitting Aliquippa Authority to base a present rate increase upon future capital im-

provements that have not actually been undertaken or are not subject to any timetable.[4] The trial court stated, "This point is particularly valid in light of the fact that indefinite collection of said increased rate could, in time, result in collections in excess of Hopewell's proportionate share of planned or contemplated capital improvements." The trial court realized the consequences of Aliquippa Authority's actions but failed to find an abuse of discretion. Instead, the trial court permitted the rate increase, but ordered Aliquippa Authority

> to make collections until three years after the date of the first increased rate collection, which is a reasonable period of time for the Authority to begin its proposed capital improvements. After those three years, the Authority must have substantially begun capital improvements or cease to collect these additional funds from the Hopewell users for deposit into a sinking fund.

By imposing a three-year construction timetable for the projected capital improvements, without finding that Aliquippa Authority abused its discretion, the common pleas court exceeded its legal authority.

Hopewell further alleges that the trial court committed an error of law by allowing Aliquippa Authority to increase non-resident rates without increasing resident rates[5] in order to pay for future capital im-

---

[4] Section 4 B(h) of the Act confirms the power of the common pleas court to scrutinize rate-making discretion in the same fashion as the Public Utility Commission. *Elizabeth Township v. Municipal Authority of the City of McKeesport*, 498 Pa. 476, 482, 447 A.2d 245, 248 (1982).

[5] A municipal authority may create classifications of users so long as the charge is uniform within the classification and is reasonably proportional to the service rendered. *See Patton-Ferguson*

provements which benefit the entire system. Hopewell argues that Aliquippa Authority's sewer rate increase is discriminatory and in direct violation of Section 306 B(h) of the Act, which states that all rates must be reasonable and uniform. In its opinion, the trial court noted that Aliquippa Authority may not charge Hopewell residents more than their proportionate share of the costs of services and benefits they receive. Consequently, the trial court ordered Aliquippa Authority "to place into a 'sinking fund for future capital improvements' all amounts collected from the Hopewell users not attributable to operating and depreciation expenses and a reasonable margin of profit . . . ." Therefore, the trial court again modified Aliquippa Authority's rate increase without finding an abuse of discretion.

The trial court further altered Aliquippa Authority's rate increase by postponing the payment of the sewer rate increase nine months beyond the effective date enacted. The trial court observed that Hopewell did not have the recommendation for a sinking fund until March, 1981, and Hopewell did not have access to a factually-supported calculation of sewer rate structures which considered the need for capital improvements until June, 1981. Again, the common pleas court has sua sponte ordered a substantial change to Aliquippa Authority's rate increase without finding an abuse of discretion.[6]

Joint Authority v. Hawbaker, 14 Pa. Commonwealth Ct. 402, 322 A. 2d 783 (1974) ; Ambridge Borough v. Pennsylvania Public Utility Commission, 137 Pa. Superior Ct. 50, 8 A.2d 429 (1939). An authority may set different rates for the same type of user within each class. See Vener v. Cranberry Township Municipal Sewer and Water Authority, 5 Pa. Commonwealth Ct. 123, 289 A.2d 506 (1972).

[6] Hopewell finally argues that the court below committed an error of law in permitting Aliquippa Authority to include a profit factor, sinking fund factor, and depreciation factor in its rate struc-

Without a showing of bad faith, fraud, capricious action or an abuse of power[7] on the part of a municipal authority, a common pleas court cannot assume the role of a rate-setting body by modifying the rate increase. Absent a finding of an abuse of discretion, the court below cannot impose a timetable for capital improvements, direct monies to a sinking fund, and/or postpone a municipal authority's rate increase. "The Court of Common Pleas' duty was to determine the uniformity and reasonableness of the rates established by the Authority, not whether it would choose a different method of establishing reasonable and uniform rates." *South Union Township Sewage Authority v. Kozares,* 13 Pa. Commonwealth Ct. 325, 332, 320 A.2d 381, 385 (1974). The lower court's modification of the rate increase, absent a finding of abuse of discretion, was clear legal error in that the law was not properly applied to the facts.[8]

Vacated and remanded.

---

ture calculation. We find no merit in these contentions. A municipal authority clearly has the power to recover its full operating costs, including a just and reasonable return. "[I]t may forego such profit as respects its consumers within its limits and demand it of its consumers outside its limits." *Ambridge Borough,* 137 Pa. Superior Ct. at 58, 8 A.2d at 433. A sinking fund may be used to replace improvements as needed as long as the contributions represent a fair and proportionate share of the present users' liability for future expenses. *See Rankin v. Chester Municipal Authority,* 165 Pa. Superior Ct. 438, 68 A.2d 458 (1949) ; *see also* Section 7.1A(a) of the Act, 53 P.S. §309.1A(a). Aliquippa Authority may also utilize a depreciation factor in its rate structure calculation when the depreciation factor has not appeared as a line item in its adopted budget. Hopewell has failed to present any legal support which limits the discretion of a municipal authority to include any of these three factors in its rate structure calculation.

[7] *See Eways v. Board of Road Supervisors,* 422 Pa. 169, 220 A.2d 840, *cert. denied,* 385 U.S. 958 (1966).

[8] Having held that the law was not properly applied to the facts, we need not reach the question of whether those facts are supported by substantial evidence.

142

ORDER

The order of the Court of Common Pleas of Beaver County dated December 20, 1982 at No. 407 of 1981 is vacated, and this case is remanded for findings, conclusion and decision pursuant to the principles stated in the foregoing opinion, after affording opportunities to the parties to present additional evidence in accordance with such principles.

Jurisdiction relinquished.

Judge BARRY concurs in the result only.