528 A.2d 1038

Life Services, Inc., d/b/a Park Avenue Manor of Chalfont and Grenoble Associates, a General Partnership, Appellants *v.* Chalfont-New Britain Township Joint Sewage Authority, Appellee.

Argued February 24, 1987, before Judges DOYLE and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*William E. Benner, Power, Bowen & Valimont,* for appellants.

*Peter A. Glascott,* for appellee.

OPINION BY JUDGE BARRY, July 21, 1987:

This is an appeal by Life Services, Inc., (Life Services) d/b/a Park Avenue Manor of Chalfont and Grenoble Associates, (Grenoble), a general partnership, from an order of the Court of Common Pleas of Bucks County[1] in which that court found the imposition of a

---

[1] Trial in this case was conducted on September 24, 1985, before the Honorable GEORGE T. KELTON, Judge on which date Judge KELTON entered a decision as trial judge in favor of the defendant/authority. Timely exceptions were filed by Life Services, treated as

"contribution fee" against them by the Chalfont-New Britain Township Joint Sewage Authority (Authority) to be reasonable. We affirm.

In September of 1982, Grenoble purchased an improved parcel of land situate in the Borough of Chalfont from The Patriotic Order Sons of America (P.O.S. of A.) P.O.S. of A. operated a residential nursing facility on the premises and Grenoble now leases the same to Life Services which operates a personal care boarding home facility licensed by the Pennsylvania Department of Public Welfare under the name Park Avenue Manor of Chalfont (Park Avenue Manor). The initial license was for a maximum occupancy of seventy-eight (78) residents. Prior to its expansion in 1983, Park Avenue Manor operated at a capacity of fifty-five (55) residents.

On June 21, 1979, the Department of Environmental Resources issued an order prohibiting additional connections to the Authority's sewage treatment plant. Pursuant to a planned expansion of their facilities Life Services: 1) sought and obtained approval from the Pennsylvania Department of Public Welfare for its expansion which resulted in the relicensing of the facility for a maximum capacity of 158 residents, 2) sought and obtained an exception granted in July of 1983 to a Department of Environmental Resources ban on the entry into the sewer system of the Authority and 3) sought and obtained a building permit from Chalfont Borough on September 13, 1983.

On December 13, 1983, the Authority amended its 1980 *Statement of Policy for Sewer Service to Apartments, Townhouses, Condominiums, Shopping Centers and other Multiple Commercial and Industrial Units or Equivalent Dwelling Units.* This *Statement of Policy*

---

motion for post-trial relief under Pa. R.C.P. 227.1 by the court below, denied and judgment entered on the court's decision of September 24, 1985, from which Life Services appeals to this Court.

provides for the imposition of, *inter alia*[2], a one-time contribution fee of $600.00 per ownership unit, rental unit or equivalent dwelling unit (EDU). An EDU is defined as "one (1) family unit or 350 gallons usage per unit." The December 1983 amendment created a new classification called "Institutions" and provides for the imposition of a contribution fee at the rate of $500.00 per one equivalent EDU with the equivalent being 100 gallons per day per person based on maximum occupancy.

The Authority applied the *Statement of Policy*, as amended, to Park Avenue Manor and calculated its contribution fee as follows:[3]

| | |
|---|---:|
| Estimated actual number of new occupants | 60 |
| Times 100 gallons per person per day | x 100 |
| Equals gallons per day | 6,000 |
| Divided by usage per EDU (350 gallons) | 350 |
| | 17.142857 |
| Times contribution rate ($500) | x $500.00 |
| Equals Contribution Fee | $ 8,571.43 |

On April 24, 1984, Park Avenue Manor paid the contribution fee under protest and subsequently initiated this action for a refund of that payment by filing a Complaint in the Court of Common Pleas pursuant to

---

[2] The 1980 *Statement of Policy* also included provisions for the imposition of the Authority's standard rates for sewer service; the imposition of the Authority's customary tap-in fees; the imposition of the Authority's charges for miscellaneous services; and guidelines concerning the application for services, ownership of rights-of-way and the installation of service lines.

[3] There is agreement between the parties that if the institutional contribution fee is otherwise valid, it has been calculated properly.

the Municipality Authorities Act of 1945[4] alleging that the imposition of the fee was unreasonable and contrary to law.

The burden is upon Life Services, as the challenging party, to prove that the Authority abused its discretion by establishing a rate system which was either unreasonable or lacking in uniformity. *Vener v. Cranberry Township Municipal Sewer and Water Authority*, 5 Pa. Commonwealth Ct. 123, 289 A.2d 506 (1972). The court below found that Life Services had not met its burden. Our scope of review on appeal is limited to considering whether the factual findings are supported by substantial evidence and whether the law was properly applied to the facts. *Port Authority of Allegheny County v. Scott*, 62 Pa. Commonwealth Ct. 631, 437 A.2d 502 (1981). Upon review of the record we find that there is substantial evidence to support the lower court's factual findings and that the law was properly applied thereto.

The Authority's power to establish and set its rates is set forth in §4B(h) of the Municipality Authorities Act of 1945[5], which provides in pertinent part:

B.  Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers:

(h) To fix, alter, change and collect rates and other charges in the area served by the facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of

---

[4] Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §301 *et seq*.

[5] 53 P.S. §306B(h).

providing for the payment of expenses of the construction, the improvement, repair, maintenance and operation of its facilities and properties, and . . . to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof. . . .

Life Services argues that the Authority incurred no added liabilities, expenses or obligations as a result of the Park Avenue Manor expansion's connection, thereby making the imposition of a contribution fee unreasonable. It argues further, that all of the Authority's obligations and costs of services are satisfied by the normal user fees paid on account of service. The evidence in the record and as found by the court below is to the contrary.

In 1979 the DER imposed a ban on further connections into the Authority's sewage treatment plant due to a hydraulic overload[6] at that facility. This is significant inasmuch as the Authority's sludge hauling costs have increased substantially because of the facility's inability to tolerate the flow. DER granted Life Services an exception[7] to its ban and permitted the additional con-

---

[6] 25 Pa. Code §94.1 defines *hydraulic overload*—The condition that occurs when the hydraulic portion of the load, as measured by the average daily flow entering a plant, exceeds the average daily flow upon which the permit and the plant design are based during each month of a recent three-month period or when the flow in any portion of the system exceeds its hydraulic carrying capacity.

[7] Life Services sought and was granted an exception to the ban under 25 Pa. Code §94.57 which provides:

> Connections which are necessary to eliminate a public hazard or which are necessary for the operation of a facility of public need shall constitute an exception to a ban.

DER found the facility operated by Life Services to be a "facility of public need" as defined in 25 Pa. Code §94.1.

nection into the Authority's sewage system which will, necessarily, increase the flow into the already overburdened facility. We agree with the court below that the imposition of a contribution fee under these circumstances is reasonable.

Life Services further argues that the contribution fee is arbitrary in that it is based on an assumed consumption of one hundred (100) gallons per day per person while their studies show that the facility consumes only fifty-one (51) to fifty-nine (59) gallons per day per person. As the trial court correctly points out in its opinion 1) Life Services made its usage estimates during periods when the facility was still expanding and therefore not at maximum capacity and 2) the contribution fee was calculated based upon an increase to the facility's population of sixty (60) rather than the facility's potential increased capacity of seventy-eight (78). The Authority's rates "must have a reasonable relation to the *value* of the service rendered either as actually consumed or as readily available for use. . . ." *Patton-Ferguson Joint Authority v. Hawbaker,* 14 Pa. Commonwealth Ct. 402, 322 A.2d 783 (1974). The Authority is not required to establish its rates *solely* upon services actually consumed. On these facts, we find that the contribution fee imposed by the Authority is reasonably related to the *value* of the service rendered and the Authority's assumed use of one hundred (100) gallons per day per person is not arbitrary.

Life Services advances two arguments in its attempt to invalidate the imposition of the contribution fee which were presented to the court below but were not addressed. First, it argues that imposing a contribution fee against Park Avenue Manor is void as against public policy inasmuch as it has been determined to be a "facility of public need" by DER. We are not persuaded by this argument. We are not willing to extend the ef-

fect of DER's determination beyond the narrow purpose for which such determination was intended, *i.e.*, to permit connection into a sewer system upon which DER had imposed a ban prohibiting additional connections. DER's exemption does not operate to eliminate Life Services' responsibility for payment of the Authority's properly imposed charges.

Life Services also argues that the adoption of the resolution imposing the contribution fee on Park Avenue Manor took place after its expansion work had commenced, was aimed specifically at that facility and, therefore, constitutes impermissible special legislation. In support of this argument, Life Services cites us to *Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 211 A.2d 514 (1965). *Commercial Properties* addresses questions involving spot-zoning which we find wholly unrelated to the instant case.

For the foregoing reasons we find that the facts as found by the court below are supported by substantial evidence and that the law was properly applied thereto to conclude that the imposition of the contribution fee here was reasonable and that Life Services is not entitled to a refund of its payment.

ORDER

Now, July 21, 1987, the Order of the Court of Common Pleas of Bucks County, entered January 23, 1986, at No. 84-6348-12-2 is affirmed.