555 A.2d 264

Municipal Authority of The City of Monongahela and The City of Monongahela *v.* Carroll Township Authority and The Township of Carroll. Carroll Township Authority, Appellant.

Carroll Township Authority and The Township of Carroll, an Involuntary Plaintiff *v.* Municipal Authority of The City of Monongahela. Carroll Township Authority, Appellant.

Municipal Authority of The City of Monongahela and The City of Monongahela *v.* Carroll Township Authority and The Township of Carroll. The Township of Carroll, Appellant.

Argued October 3, 1988, before Judges COLINS and McGINLEY, and Senior Judge KALISH, sitting as a panel of three.

*George M. Lynch*, with him, *Paul N. Barna, Jr.*, for appellant/appellee, Carroll Township Authority.

*Virginia Desiderio,* with her, *Herman J. Bigi,* for appellant/appellee, Township of Carroll.

*Mark A. Willard,* with him, *Richard F. Rinaldo,* and *Eileen R. Sisca, Eckert, Seamans, Cherin & Mellott,* and *Jack H. France,* for appellees/appellants, Municipal Authority of the City of Monongahela and the City of Monongahela.

OPINION BY JUDGE MCGINLEY, February 27, 1989:

This is an appeal by the Carroll Township Authority (Carroll Authority) and the Township of Carroll (Township) from the Order of the Court of Common Pleas of Washington County[1] (trial court), dated December 3, 1987, affirming its June 11, 1987 orders and dismissing Carroll Authority's various motions for post-trial relief. The Municipal Authority of the City of Monongahela (Mon Authority) and the City of Monongahela (City) have filed a Motion to Quash the Appeal of the Township at No. 326 C.D. 1988, as untimely.[2]

This case consists of two consolidated civil actions arising out of a written agreement (Agreement) dated May 1, 1971.[3] Under this Agreement Mon Authority agreed to receive, transport, and treat sewage coming

---

[1] Civil Division Nos. 217, January Term, 1982 A.D., and 442, August Term, 1983 A.D.

[2] On April 22, 1988, this Court entered an Order (at No. 326 C.D. 1988) denying Mon Authority and the City's Motion to Quash. On April 29, 1988, Mon Authority and the City filed an Application for Review by the Court of the Denial of their Motion to Quash the Appeal of the Township. On May 12, 1988, this Court granted the Application and vacated its April 22, 1988 Order.

[3] The pertinent sections of this Agreement are:

A. All flow of Carroll Authority sewers would be measured at four vaults located at points where the sewage left the Carroll Authority system and entered the Mon Authority system.

from portions of the Township.[4] Carroll Authority and the Township agreed to pay Mon Authority for the services according to rates and charges set forth in the Agreement. In January 1982, Mon Authority and the City filed an action in assumpsit against Carroll Authority and the Township to collect certain amounts alleged to be due under the Agreement.[5] Jack H. France, Esq. (France) entered his appearance for Mon Authority. On February 24, 1982, Herman J. Bigi, Esq. (Bigi) entered his appearance for the Township by filing a Praecipe for Appearance. On February 12, 1982, Paul N. Barna, Jr., Esq. (Barna) entered his appearance for Carroll Authority.

In August 1983, Carroll Authority and the Township instituted an action against Mon Authority to set aside the Agreement pursuant to Section 4 B(h) of the Municipality Authorities Act of 1945 (Act), P.L. 382, *as amended*, 53 P.S. §306 B(h) contending that a portion of Mon Authority's rate for sewage treatment was unreasonable and not

---

B. A basic rate per thousand gallons would be calculated annually and charged to Carroll Authority for the treatment of the Carroll Authority sewage by Mon Authority.

C. *For all sewage of Carroll Authority beyond 700,000 gallons per day, an 'overrun' charge or penalty would be assessed Carroll Authority: $2.00 per thousand gallons for each of the first 21,000 gallons beyond 700,000 gallons daily and $10 per thousand gallons thereafter. Both charges are in addition to the basic rate (currently $1.378 per thousand).*

(Mon Authority and the City's Exhibit 1 at 12a-30a of the Reproduced Record (RR) (emphasis added).)

[4] The sewage from other portions of the Township is treated by another authority, not involved in these proceedings. (Opinion and Orders of the trial court, June 11, 1987, at 2.)

[5] *Municipal Authority of the City of Monongahela and City of Monongahela v. Carroll Township Authority and the Township of Carroll,* Civil Division No. 217, January Term, 1982 A.D.

uniform.[6]  Mon Authority counterclaimed in the second action and the trial court consolidated the two actions for trial.[7]

On June 11, 1987, the trial court concluded that "[b]y failing to make payments in accordance with the 1971 agreement, Carroll Authority and Carroll Township are in breach of the agreement. They are jointly and severally liable to Mon Authority for the full amounts due and owing under the agreement." (Opinion and Orders of the trial court, Conclusion of Law No. 7, at 26.) Two orders were issued by the trial court. In the first action, Mon Authority and the City against Carroll Authority and the Township, the trial court found Carroll Authority and the Township jointly and severally liable

in the amount of $727,164.74, which constitutes past due sewage treatment charges from September 1981 through March 1987, together with 6% simple interest per annum, less any payments which might have been made by the defendants and not computed as of March 31, 1987.

The rates and charges shall continue to be obligated and paid for by the defendants in accordance with the 1971 agreement, plus interest on all past due amounts from April 1, 1987, to the date of this decision at 6% simple interest per

---

[6] *Carroll Township Authority and Carroll Township v. Municipal Authority of the City of Monongahela,* Civil Division No. 442, August Term, 1983 A.D.

[7] A third action filed at Civil Division No. 140, May Term, 1985 A.D., was instituted by Carroll Authority against Mon Authority. The trial court sustained the preliminary objections of Mon Authority and dismissed the complaint finding that it was barred by res judicata. Carroll Authority took an appeal to our Court which affirmed the order of the trial court. *Carroll Township Authority v. Municipal Authority of the City of Monongahela,* 102 Pa. Commonwealth Ct. 363, 518 A.2d 337 (1986).

annum. . . . (Opinion and Orders of the trial court at 28-29.)

In the action filed by Carroll Authority and the Township against the Mon Authority the trial court held in favor of the Mon Authority and dismissed the action. On the counterclaim filed by the Mon Authority the trial court found in favor of the Mon Authority, declared the Agreement valid and enforceable, and the rates and charges set forth therein uniform and reasonable under Section 4 B(h) of the Act. Finally, the trial court ordered Carroll Authority and the Township to specifically perform all obligations under the Agreement. On December 3, 1987, the trial court affirmed its prior decision and dismissed motions for post-trial relief and entered a final order from which Carroll Authority and the Township filed their appeals.

Mon Authority and the City filed Praecipes for Judgment on the first action (at No. 217, January Term, 1982 A.D.) and Mon Authority filed a Praecipe for Judgment in the second action (at No. 442, August Term, 1983 A.D.) and served them on Barna and on George Lynch, Esq. (Lynch), trial counsel for Carroll Authority and the Township, on December 10, 1987. Notices of Entry of Judgment were mailed by the prothonotary to attorneys Lynch and Barna on December 14, 1987. On December 23, 1987, Carroll Authority filed Notices of Appeal at Nos. 2916 and 2917 C.D. 1988 from the final order. On January 28, 1988, Bigi filed a Notice, of Appeal on behalf of the Township. Mon Authority and the City moved to quash the appeal of the Township as untimely on March 4, 1988, at No. 326 C.D. 1988. The Township, per Bigi, filed an answer on March 12, 1988. After oral argument on April 12, 1988, an order was issued denying Mon Authority and the City's Motion to Quash. On April 29, 1988, Mon Authority and the City requested review of

the denial of their Motion to Quash the Appeal of the Township. On May 12, 1988, this Court granted reconsideration of Mon Authority's and the City's Motion and vacated its April 22, 1988 order. (*See* Mon Authority and the City's Exhibit No. 9.) Their Motion to Quash is before this Court at No. 326 C.D. 1988. We will address this Motion first and then we will address the merits of the appeal of the trial court's final order.

## I

In support of their Motion to Quash, Mon Authority and the City argue that the Township appeal must be quashed because it was filed more than thirty days after the entry of the trial court's final order and more than thirty days after the Notices of Entry of Judgment were sent. Mon Authority and the City argue that Bigi had been completely inactive in the litigation for over four and a half years and did not attend or participate in the trial of the cases and therefore, the Praecipes for Judgment and the Notices of the Entry of Judgment were properly sent to Lynch and Barna, who represented the Township at trial.

The Township argues that because Bigi entered his appearance on behalf of the Township, was the only attorney listed on the docket as the attorney of record for the Township, and that Bigi had not withdrawn his appearance, and also because no other attorney filed an Appearance with the prothonotary on behalf of the Township, Bigi should have been served with notice of the Praecipes for Judgment and the Notices of Entry pursuant to Pa. R.C.P. No. 1012 and Pa. R.C.P. No. 237.

Pa. R.C.P. No. 1012(a) provides: "A party may enter a written appearance which shall state an address within the Commonwealth at which papers may be served. . . ." Section (b) provides: "An attorney's appearance may not be withdrawn without leave of Court unless another

attorney has entered or simultaneously enters an appearance for the party. . . ."

Pa. R.C.P. No. 237 provides:

No praecipe for judgment on a verdict, or for judgment on a decision in a trial without a jury or for a final decree following a decree nisi in equity shall be accepted by the prothonotary unless it includes a certificate that a copy of the praecipe has been mailed to *each other party who has appeared in the action or his attorney of record*. (Emphasis added.)

One commentator has noted:

The Rule provides, even-handedly, that neither plaintiff nor defendant may file a praecipe to enter judgment on a verdict, or judgment on a decision in a trial without jury, or a final decree following a decree nisi in equity, unless he mails in advance a copy of that praecipe to each party who has appeared in the action or to his attorney at record … This will assure that no party will find the time for appeal running against him without his knowledge.

1 *Goodrich-Amram* 2d. 237:1.

The Township argues that because Mon Authority and the City did not serve Bigi they did not comply with the Rules, and as a result the judgment is a nullity without legal effect. Mon Authority and the City argue that there is no question that the Township's notice of appeal was untimely filed pursuant to Pa. R.A.P. 903(a).[8]

---

[8] This Rule provides: "Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken." Bigi's notice of appeal was beyond 30 days of the entry of the order.

Mon Authority and the City argue that notice was sent to the trial attorneys Lynch and Barna and Pa. R.C.P. No. 237 does not require that notice of the Praecipes of Judgment and Notices of Entry must be mailed to every attorney who ever appeared for a party at any time during the history of the litigation but that it can be mailed to the attorney of record. We recognize that if we accept the Township's argument this case would require that notice of Praecipe for Judgment and Notice of Entry be sent to every attorney who ever appeared for any party, regardless of an attorney's lack of continuing involvement in the litigation. Furthermore, Bigi's argument fails in a practical sense because the entry of a written appearance is not mandatory under Pa. R.C.P. No. 1012(a).

Bigi filed his appearance for the Township in 1982, but Lynch and Barna represented both the Township and the Authority at trial.[9] Notice given to Lynch and Barna was adequate under Pa. R.C.P. No. 237. The Township's appeal is therefore untimely and the Motion to Quash at No. 326 C.D. 1988, is hereby granted.

## II

Several issues are raised in Carroll Authority's appeal from the trial court's final order: whether or not the contract entered into by Carroll Authority with Mon Authority is valid and enforceable; whether a contract entered into pursuant to Section 4 B(p) of the Act, 53 P.S.

---

[9] It is undisputed that from at least September 23, 1983, attorney Bigi took no part in this litigation. Bigi attended no hearings, arguments, conferences, or depositions, nor does his name appear of record on any papers filed in this litigation since September of 1983 on behalf of the Township or Carroll Authority. (*See* Mon Authority and the City's Exhibit 6 at Exhibits "A" through "G".)

§306 B(p)[10] subject to the requirement of Section 4 B(h) of the Act that rates be "reasonable and uniform;" whether the overrun rates and charges set forth in the Agreement constitute a manifest and flagrant abuse of discretion or a purely arbitrary establishment of the rate system; whether Carroll Authority is equitably estopped from challenging the system of rates and charges set forth in the Agreement; and finally, whether the proceedings should be dismissed as to the Township even if this Court finds otherwise as to Carroll Authority.[11]

Our scope of review of trial court decisions in cases involving Section 4 B(h) of the Act is limited to determining whether the factual findings are supported by substantial evidence and whether the law was properly ap-

---

[10] This Section provides:

    B. Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers:

    . . . .

    (p) To enter into contracts to supply water and other services to and for municipalities that are not members of the Authority, or to and for the Commonwealth of Pennsylvania, municipalities, school districts, persons or authorities, and fix the amount to be paid therefor.

Section 4 B(p) of the Act.

[11] Carroll Authority argues it became the operational entity for the sewer system installed in the Township and therefore Carroll Authority alone should bear the potential responsibility for the unpaid sewage treatment bills. However, the Township did sign and was a party to the Agreement with joint and several liability. The issue is raised however, that some residents of the Township are connected to a system that feeds into Donora, Pennsylvania and not into the treatment plant in the City, and would bear the liability through Township taxes for a system to which they had no connection. This Court's review of the record indicates that Carroll Authority is raising this issue for the first time before our Court and it is therefore deemed waived pursuant to Pa. R.A.P. 302(a) .

plied to the facts. *Life Services, Inc. v. Chalfont-New Britain Township Joint Sewage Authority,* 107 Pa. Commonwealth Ct. 484, 528 A.2d 1038 (1987).

We find this Court's recent holding in *Township of Aston v. Southwest Delaware County Municipal Authority,* 112 Pa. Commonwealth Ct. 434, 535 A.2d 725 (1988),[12] dispositive of the first three issues raised. In *Aston,* this Court held that regardless of whether they meet the requirement of Section 4 B(h) of the Act that all rates charged be "reasonable and uniform." The Court stated:

> While Section 4B(h) speaks of fixing reasonable and uniform rates [in the area served by 'a municipality authority's] facilities,' there is no such limitation where an authority contracts with another, presumably outside that area. In the case of a contract under 4B(p), a municipal authority is given the power to fix the rates to be paid for its services, without the statutory limitation that they be 'reasonable and uniform.' The discrepancy is not illogical when the difference between the two situations is examined. In the first case, under Section 4B(h), a municipal authority is granted the exclusive authority to set rates for its services. The recipient of these services has no input into the ratemaking process. It is therefore protected by the provision requiring the rates to be reasonable and uniform and subject to judicial review. Such is not the case when two municipal bodies contract for services, as under Section 4B(p). That section allows a municipal authority to fix the rate

---

[12] *Aston* was decided in January 1988, a month after the trial court's December 3, 1987, order affirming its June 11, 1987, decision.

for its services, but that rate, of course, will be the subject of negotiation before a contract is concluded. There is nothing in the statute to prevent the inclusion of a clause providing for periodic rate increases and, conversely, nothing to prohibit setting a maximum rate.

*Aston,* 112 Pa. Commonwealth Ct. at 438-439, 535 A.2d at 728.

Mon Authority and the City argue that even if the Agreement were subject to the requirements of Section 4 B(h) the trial court correctly determined that the Agreement was valid and enforceable. The rates and charges are unlawful only if the trial court properly found they constituted a manifest and flagrant abuse of discretion or a purely arbitrary establishment of a rate system.[13] Instead, the trial court found the rates and charges were established by mutual agreement of the parties and uniformly applied and reasonably related to the value of the service rendered by Mon Authority. It found that the rights and duties contained in the written contract were negotiated at arm's-length by parties of substantially equal bargaining power and were not "arbitrary or capricious."

Mon Authority and the City argue that Carroll Authority is equitably estopped, as the trial court found, from challenging the rates and charges set forth in the Agreement which were paid without protest until Sep-

---

[13] The scope of review of a court of common pleas of a challenge pursuant to Section 4 B(h) of the Act is strictly limited. "[O]ur review of a rate resolution is limited to a determination of whether or not there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system." *Twining Services Corp. v. Northampton Bucks County Municipal Authority,* 44 Pa. D. & C. 3d 89 (1984), *affirmed,* 111 Pa. Commonwealth Ct. 103, 533 A.2d 202 (1987).

tember, 1981.[14] The trial court did not have the benefit of *Aston.* It did not err. During the period from late 1978 through August of 1981, Carroll Authority paid in full the rates and charges set forth in the 1971 Agreement. The rates and charges now challenged by Carroll Authority are established in the Agreement and constitute a contractual obligation of Carroll Authority which it would be equitably estopped from disclaiming had the trial court not found the rates reasonable and enforceable. The trial court relied upon this Court's decision in *White Rock Sewage Corporation v. Township of Monroe,* 77 Pa. Commonwealth Ct. 119, 465 A.2d 102 (1983), wherein Monroe Township agreed to treat sewage generated within White Rock Acres, a municipal subdivision. The agreement between White Rock and Monroe Township became effective in August, 1978 and White Rock made payments at the contractually agreed upon rate until September of 1979 when it refused to make further payments. White Rock claimed the rates to which it agreed were excessive. In *White Rock,* the evidence at trial demonstrated that the amounts owed by White Rock were attributable in large part to unexpectedly high flows in its sewage collection system caused by excessive infiltration and inflow, and not to unreasonable treatment rates. The trial court found in *White Rock* that the excess costs were the result of an unexpectedly large sewage flow due to a defective condition in White Rock's system. The trial court in the case *sub judice,* also found that Carroll Authority's sewage collection system suffers from similar defects which have permitted excessive extraneous flows to enter the Carroll Authority system and be delivered to the Mon Authority sewage treatment plant.

---

[14] No Board members of the Carroll Authority in 1971, when the Agreement was struck, were members of the Board in 1981, when the Carroll Authority unilaterally ceased making payments.

The trial court considered that the Agreement expressly grants Carroll Authority and the Township the option to utilize alternate disposal systems for the treatment of sewage in excess of the contract load of 700,000 gallons per day.[15] The trial court's findings are supported by substantial evidence and the law has been properly applied to the facts. *Life Services, Inc.* Accordingly, we affirm.

## ORDER

AND NOW, this 27th day of February, 1989, the Motion to Quash the appeal of the Township of Carroll filed by the Municipal Authority of the City of Monongahela and the City of Monongahela at No. 326 C.D. 1988, is hereby granted. The appeal of the Township of Carroll of the Order of the Court of Common Pleas of Washington County, dated December 3, 1987, at Nos. 217, January Term, 1982, and 442, August Term, 1983, is hereby dismissed.

The Order of the Court of Common Pleas of Washington County, dated December 3, 1987, at Nos. 217, January Term, 1982, and 442, August Term, 1983, is hereby affirmed.

---

[15] Testimony indicates that witnesses for Mon Authority and Carroll Authority's General Manager admitted at trial that the unauthorized overrun charges actually do serve as the incentive for Carroll Authority to solve its massive problem with excessive infiltration and inflow into its sewage system. (Notes of Testimony, May 27, 1986, (N.T. I) at 860.) Joseph Lagnese, who provided expert testimony for MON, explained that for such an incentive to accomplish its objective, the unauthorized overrun charges need to be of sufficient magnitude "to make sure that Carroll Township did not have a less expensive way to go, rather than to correct their system." (Notes of Testimony, June 2, 1986, (N.T. II) at 55.)