**MUNICIPAL AUTHORITY OF the
CITY OF MONONGAHELA and
the City of Monongahela**

v.

**CARROLL TOWNSHIP AUTHORITY
and the Township of Carroll,
Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2000.
Decided Aug. 29, 2000.
Reargument Denied Nov. 13, 2000.

Foster S. Goldman, Jr., Pittsburgh, for appellants.

Robert L. Byer, Pittsburgh, for appellees.

Before KELLEY, Judge, FLAHERTY, Judge, and NARICK, Senior Judge.

FLAHERTY, Judge.

Carroll Township Authority (CTA) and the Township of Carroll (Township) appeal from an order of the Court of Common Pleas of Allegheny County (Allegheny County CCP) which modified the arbitrator's award adversely to CTA and the Township. We reverse in part and vacate and remand in part.

This case has a long and involved history through much litigation. All the parties are located in Washington County. CTA is the water authority in the Township. In 1971, CTA and the Township (collectively, CTA) entered into an agreement (the Agreement) with the Municipal Authority of the City of Monongahela (MACM) and the City of Monongahela (collectively, Monongahela). MACM is the water authority in the City of Monongahela. Pursuant to the Agreement, Monongahela agreed to accept from CTA sewage water for treatment at Monongahela's water treatment facilities. The Agreement provided that Monongahela would accept up to 700,000 gallons a day to be charged at a rate, which is determined by a method, specified in the Agreement. Any sewage water in excess of 700,000 gallons per day would be charged at a higher rate fixed in the Agreement. *See* Reproduced Record at pp. 53a and 72a. *See also* CTA's main brief at 4–5. The Agreement provides that any dispute over the rates to be charged shall be resolved by arbitration. See Agreement § 2.05, R.R. at 57a.

Beginning in September 1981 CTA ceased making some payments under the agreement. R.R. at 135a. In January 1982, Monongahela instituted suit against CTA for breach of contract. In August 1983, CTA instituted suit against Monongahela to set aside the Agreement. The suits were consolidated in a bench trial in the Washington County Court of Common Pleas (Washington County CCP) before the Honorable Thomas Terputac. In 1987, Judge Terputac found in favor of Monongahela and against CTA. Judge Terputac held, inter alia, that the rates charged were reasonable, that the Agreement was valid, and that CTA was required to make payments in accordance with the Agreement. This court affirmed that decision. *See Municipal Authority of the City of Monongahela v. Carroll Township Authority,* 123 Pa.Cmwlth. 615, 555 A.2d 264 (1989), *allocatur denied,* 524 Pa. 599, 568 A.2d 1249 (1989) and 524 Pa. 601, 568 A.2d 1250 (1989). In 1995, CTA instituted a suit in federal court against MACM, alleging inter alia, fraud and negligent misrepresentation. In 1998, CTA lost the federal suit it brought against MACM.

In addition, the parties have also resorted to arbitration several times. The parties resorted to arbitration over the 1996 rates to be charged to CTA. CTA also sought to arbitrate the 1997 rates which Monongahela was to charge it. As there was some disagreement regarding the arbitration, CTA resorted to the Washington County CCP seeking to compel arbitration. This case regarding compulsory arbitration of the 1997 rates was assigned to Judge Gilmore of the Washington County CCP. Meanwhile, with the passage of time, and the case before Judge Gilmore regarding the dispute over arbitration of the 1997 rates not yet resolved, Monongahela had to establish the rates to be charged for 1998. Monongahela established the 1998 rates and CTA sought to arbitrate those rates as well. As there was a disagreement regarding whether the dispute over the 1998 rates was properly the subject of arbitration, resort was again taken to the Washington County CCP wherein Judge Terputac ordered compulsory arbitration. Subsequently, on April 2, 1998, Judge Gilmore of the Washington County CCP ordered the parties to arbitrate their dispute over the rate schedule to be charged to CTA for 1997. He further ordered that the arbitration be conducted before the same arbitrator before whom the parties' dispute over the 1998 rate was to be heard. The arbitrator chosen was an engineer but not an attorney who apparently had his office in Allegheny County where the arbitration proceedings took place. The arbitrator issued his decision in December 1998. It is from the arbitrator's decision which, inter alia, reduced the 1997 and 1998 rates as set by Monongahela that was appealed to the Allegheny County CCP. After Monongahela appealed the arbitrator's award to the Allegheny County CCP, CTA requested the Allegheny County CCP to transfer venue to the Washington County CCP. The Allegheny County CCP declined to do so, concluding that it was barred from transferring venue based upon 42 Pa.C.S. § 7319. *See, e.g.,* Transcript of Proceedings before Judge Friedman on Jan. 25, 1999 at pp. 12–14 & 36, Certified Record. Subsequently, the Allegheny County CCP modified the arbitrator's award by, inter alia, increasing the rates charged to CTA. CTA appeals to this court from the Allegheny County CCP order which modified the arbitrator's award and denied the change of venue.

Although CTA raises a total of nine issues in its brief, because we find addressing one of the issues renders it unnecessary to address the remaining issues we will address only that issue. CTA asserts that the Allegheny County CCP abused its discretion in not transferring the appeal of the arbitrator's award to the Washington County CCP.[1]

■ The parties do not even agree as to which statutory provision regarding venue governs these proceedings. Monongahela asserts that the statutory provision governing this case is the commonly called Arbitration Act of 1927 (Arbitration Act), Act of April 25, 1927, P.L. No. 248, formerly 5 P.S. §§ 161–179 repealed by Act of October 5, 1980, P.L. 693, No. 142 § 501(c). Monongahela asserts that the Arbitration Act of 1927 governs this case because the Agreement herein was signed in 1971 which was prior to the effective date of the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7320 (Uniform Act), i.e., December 4, 1980, so the Uniform Act superceded the Arbitration Act. Assuming for the sake of argument that the Arbitration Act governs this case, we find Monongahela's argument regarding venue being proper in Allegheny County under the Arbitration Act unpersuasive.

---

1. Appellate review over an order of a trial court regarding venue is limited to determining whether the trial court abused its discretion. *Korner v. Warman,* 659 A.2d 83 (Pa. Cmwlth.1995). An abuse of discretion includes not only errors of judgment but also the overriding or misapplication of the law. *Smith v. Philadelphia Gas Works,* 740 A.2d 1200 (Pa.Cmwlth.1999).

Monongahela argues that under Section 18 of the Arbitration Act "which governs the present dispute because the arbitration agreement was executed in 1971, venue is proper where the Arbitrator made his report—namely in Allegheny County." Monongahela's brief at p. 15. However when we turn to the relevant section of the Arbitration Act, we find the following:

[e]xcept as otherwise specifically indicated, all references in this act to the courts are to be construed to mean the common pleas courts of the county having jurisdiction of the parties or the subject matter. **If prior to the award, any court of common pleas shall have entertained any motion in respect to said arbitration, such court shall retain jurisdiction and all subsequent proceedings shall be filed in said court.** If there be no proceedings prior to the award, the arbitrators may, in the award, designate the county in which subsequent proceedings shall be had. If the arbitrators fail to designate such county, and there shall have been no prior proceedings, the moving party may proceed in the county in which (a) the arbitrators made their reports, or (b) the county in which the other party resides or has an office, or (c) the county in which the court would have had jurisdiction if an action had been instituted originally in respect to the subject matter of the arbitration.

(Emphasis added). It appears that Monongahela relies upon the language found under section (a) above, namely the "moving party may proceed in the county in which (a) the arbitrators made their reports."

2. Because we find that under either the Arbitration Act or under the Uniform Act, Monongahela loses, we need not decide which statutory provision controls.

3. Among the issues raised by the parties is whether the arbitration involving the 1997 and 1998 rates was common law arbitration or statutory arbitration. However as the dis-

While it is true that Allegheny County is the county in which the arbitrator made his report, the county in which the arbitrator made his report is the proper county in which to appeal the arbitrator's award only "[i]f the arbitrators fail to designate such county, **and** there shall have been **no prior proceedings...**" (Emphasis added). Here, the arbitrator did not designate any county and there were "prior proceedings," namely the two proceedings before the Washington County CCP wherein the parties were directed to arbitrate their disputes over the 1997 and 1998 rates. Thus, under the above emphasized language of the statute, which is clear and unambiguous, because there were judicial proceedings prior to the arbitration award at issue herein in the Washington County CCP which entertained motions with respect to that arbitration, i.e., motions seeking to compel the arbitration, the Washington County CCP should have retained jurisdiction and all subsequent proceedings should have been filed in said court. Thus, if Monongahela's contention is correct that the Arbitration Act applied herein, then the Allegheny County CCP erred as a matter of law in entertaining the appeal from the arbitration, given that the Washington County CCP had previously entertained motions in respect to the arbitration.

Alternatively, Monongahela argues that if the Uniform Act applies, venue was proper in Allegheny County and the Allegheny County CCP did not abuse its discretion in refusing to transfer venue to Washington County. Again we disagree.[2] The applicable provisions of the Uniform Act governing the venue of court proceedings regarding arbitration is found at Section 7319 of the Judicial Code, 42 Pa.C.S. § 7319 which provides as follows: [3]

positive issue here concerns the proper venue and the applicable statutory venue provisions are the same whether the arbitration is classified as common law or statutory, we need not reach this issue. *See* 42 Pa.C.S. § 7342 which governs common law arbitration and provides that

The following provisions of Subchapter A (relating to statutory arbitration)[i.e., the

Except as otherwise provided by general rules:

(1) An initial application to a court under this subchapter shall be made to the court of the county in which the agreement [to arbitrate] prescribes that the arbitration hearing shall be held or, if the hearing has been held, in the county in which the hearing was held.

(2) If an application to a court cannot be made under paragraph (1) the application shall be made to the court in the county where the adverse party resides or has a place of business or, if he has no residence or place of business in this Commonwealth, to the court of any county.

(3) All subsequent applications to a court shall be made to the court hearing the initial application unless that court otherwise directs.

Because the Agreement does not specify a county in which the arbitration hearing shall be held and the arbitration hearing herein was held in Allegheny County, the initial application which was filed by Monongahela on January 15, 1999 to vacate or modify or correct the arbitration award was filed in the Allegheny County CCP. However, CTA points out that the Allegheny County CCP should have transferred venue to the Washington County CCP because all of the parties reside there, all of the issues arose there and the order compelling arbitration was made by the Washington County CCP. Monongahela argues however that the Allegheny County CCP did not have discretion to transfer the case to Washington County CCP because the statute provides that "an initial application to a court under this subchapter **shall** be made to the court of the county . . . in which the [arbitration] hearing was held." (Emphasis added). Monongahela suggests that the use of "shall" requires the initial application be made to the court situated in the county in which the arbitration was

held pursuant to 42 Pa.C.S. § 7319(a). *See, e.g., Cranberry Park Associates v. Cranberry Township Zoning Hearing Board,* 561 Pa. 456, 751 A.2d 165 (2000)(shall is mandatory).

Even accepting that the use of the word "shall" means that it is mandatory for the initial application to be filed in a court of the county wherein the arbitration hearing was held, Monongahela's argument fails to take account of the introductory phrase of Section 7319 which states that "except as otherwise provided by general rules." Thus, reading the statutory phrases together, the initial application shall be made to the county in which the arbitration hearing was held except as otherwise provided by general rules.

■ The Constitution of this Commonwealth provides that "the power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law." Art. III, Section 23. The Supreme Court has interpreted this to mean that the legislature had to enact a statute in order to make this provision of the Constitution operative. *See Wattson v. The Chester and Delaware River Railroad,* 83 Pa. 254 (1877). One of the statutes by which the legislature rendered this Constitutional provision operative was 42 Pa.C.S. § 5106 which provides that "[t]he power to change venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided or prescribed by law." *See Pennsylvania Power and Light Co. v. Gulf Oil Corp.,* 270 Pa.Super. 514, 411 A.2d 1203, 1210 n. 16 (1980), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2943, 64 L.Ed.2d 825 (1980). Another statute by which the legislature sought to give effect to the Constitutional provision was 42 Pa. C.S. § 931(c) which provides in relevant part that "the venue of a court of common pleas . . . shall be as prescribed by general rule." "General rule" essentially means

Uniform Arbitration Act] shall be applicable to arbitration conducted pursuant to this subchapter [i.e., common law arbitration]:

. . . .

Section 7319 (relating to venue of court proceedings).

those rules which the Pennsylvania Supreme Court promulgates. 42 Pa.C.S. § 102 (defining "general rule"). The term "general rule" as used by the legislature includes the Pennsylvania Rules of Civil Procedure. *See, e.g., Cuffee v. Department of Public Welfare,* 5 Pa.Cmwlth. 503, 291 A.2d 549, 551 (1972). *See also* Pa. R.C.P. No. 76 which defines "general rule" as "a Rule of Civil Procedure promulgated by the Supreme Court of Pennsylvania under the authority of Article V, Section 10(c) of the Constitution of 1968 or of any Act of Assembly." In this regard, we note that 42 Pa.C.S. § 7319, the specific statute at issue herein subordinates itself to the Pennsylvania Rules of Civil Procedure when it states that "[e]xcept as otherwise prescribed by general rules...." Thus, in questions of venue and of changing venue we are directed by the General Assembly under Section 7319 to look to the Rules of Civil Procedure promulgated by the Pennsylvania Supreme Court.

■ Turning to the Pennsylvania Rules of Civil Procedure we find that they provide, inter alia,

[e]xcept when the Commonwealth is the plaintiff or when otherwise provided by an Act of Assembly, an action against a political subdivision may be brought only in the county in which the political subdivision is located.

Pa. R.C.P. No. 2103. The term "action" is specifically defined by Pa. R.C.P. No. 2101 which provides that "as used in this chapter, 'action' means any civil action or proceeding at law or in equity brought in or appealed to any court which is subject to these rules."[4] The definitional section of the Rules of Civil Procedure does not specifically define the term "proceeding." In the absence of such definition, we are instructed to construe words according to their common and approved usage. Pa. R.C.P. No. 103. In order to ascertain the common and approved usage, resort may be had to the dictionary. *See, e.g., Patricca v. Zoning Board of Adjustment of the City of Pittsburgh,* 527 Pa. 267, 275, 590 A.2d 744, 748 (1991). "Proceeding" is defined by Merriam Webster's Collegiate Dictionary 10th Edition as "a legal action." Given that the Supreme Court used the broader term "proceeding" in Rule 2101 to define "action" and proceeding means legal action, we conclude that filing an initial application to a court of common pleas from an arbitrator's award comes within the meaning of bringing an "action" as used in Rule 2101 as constituting a "proceeding at law... brought in any court..." Accordingly, we conclude that Rule 2103 applies in this case.

■ However, concluding that Rule 2103 is applicable herein does not, in and of itself resolve our case. A problem arises because of the language of 42 Pa. C.S. § 7319 which states that "except as otherwise prescribed by general rules" the initial application to a court shall be made to the county in which the arbitration hearing was conducted. However, Rule 2103 also states that an action may be brought against a political subdivision only in the county in which the political subdivision is located unless "otherwise provided by an Act of Assembly." Given that the statute refers to the rule and the rule refers to the statute, it is unclear how these two provisions may be construed together. There appear to be three choices: (A) give partial effect to the statutory provision by ignoring its introductory phrase "except as otherwise prescribed by general rules" and apply only 42 Pa.C.S. § 7319(1); (B) ignore that portion of the rule which states "except ... when otherwise provided by an Act of Assembly" and give effect only to the words of the rule which prohibits an action from being brought against a political subdivision except in the county in which it is located; or (C) attempt to give effect to the whole of

---

4. Unlike Pa. R.C.P. No. 1001 which defines "action" strictly in terms of "civil action" seemingly indicating only suits originally prosecuted in a court of law, Rule 2101 defines action more broadly as a "civil action **or proceeding** at law." (Emphasis added)

each provision by reconciling the two provisions. Given the rules of construction, we are required to opt for choice C. *See, e.g.,* 1 Pa.C.S. § 1922(2) ("the General Assembly intends the entire statute to be effective and certain."); Pa. R.C.P. No. 127(b) ("Every rule shall be construed if possible, to give effect to all its provisions.")

■ In obeying these rules of construction, we conclude that where as here, an arbitration hearing has been held in a county (and there is no provision in the arbitration agreement prescribing the place where the arbitration hearing shall be held), the initial application to a court **need not** be filed in the county wherein the arbitration hearing was held when the political subdivision defendant is not located within that county. Because Rule 2103 bars an action being brought against a political subdivision in a county other than that in which the political subdivision is located, an initial application, which as shown above constitutes the bringing of an action within the meaning of Rule 2103, cannot be filed in a court outside of the county wherein the political subdivision is located. Such a result however is not inconsistent with the legislative mandate of 42 Pa.C.S. § 7319 because the legislature specifically contemplated the situation where an initial application could not be brought in the county wherein the arbitration hearing was held and provided that in such a case, the initial application may be brought in the county where the adverse party resides or has a place of business. *See* 42 Pa.C.S. § 7319(2) which provides in relevant part that

> [i]f an application to a court cannot be made under paragraph (1) the application shall be made to the court in the county where the adverse party resides or has a place of business or, if he has no residence or place of business in this

Commonwealth, to the court of any county.

Thus, because Rule 2103 prohibits the bringing of an action against a political subdivision in a county other than the one in which the political subdivision is located and the General Assembly has not "otherwise provided" given that the General Assembly has permitted the making of an initial application in a county other than the one in which the arbitration hearing was held, the Allegheny County CCP erred as a matter of law in not transferring this case to the Washington County CCP. This construction of the rule and statute comports with the rules of construction that we are to give effect to the whole of the rule and the whole of the statute if possible. Hence, the Allegheny County CCP abused its discretion when it misapplied the law by permitting Monongahela to bring an action against CTA and the Township in Allegheny County when both CTA and the Township are political subdivisions wholly located within Washington County thereby directly contravening Rule 2103. The initial application herein need not have been brought in Allegheny County because the General Assembly has not mandated that in all situations initial applications must be made to the CCP of the county wherein the arbitration hearing was held given that the General Assembly specifically permitted initial applications to be brought in the county wherein the opposing party resides as found in 42 Pa.C.S. § 7319(2). Thus, it cannot be said that the General Assembly has "otherwise provided" that initial applications **must** be made in a county other than the one in which a political subdivision defendant is situated within the meaning of Rule 2103.[5]

Accordingly, the order of the Allegheny County CCP is reversed to the extent it

---

**5.** Monongahela's reliance upon *Cheeseman v. Lethal Exterminator, Inc.,* 549 Pa. 200, 701 A.2d 156 (1997) for the proposition that a change of venue is warranted only where the plaintiff's choice of forum is shown to be oppressive or vexatious is unwarranted. That case did not involve a political subdivision as a party defendant which is the dispositive feature of this case as it invokes Rule 2103 which was not at issue in *Cheeseman.*

denied the change of venue and vacated as to the remainder of the order. This case is remanded to the Allegheny County CCP for it to grant the change of venue to the Washington County CCP for further proceedings. *See Ribinicky v. Yerex,* 549 Pa. 555, 701 A.2d 1348 (1997)(where a political subdivision is a party defendant, venue is only proper in the county in which the political subdivision is located).

### ORDER

AND NOW, this 29th day of August, 2000, the order of the Court of Common Pleas of Allegheny County, dated June 17, 1999 and docketed at GD 99–0708 is hereby reversed to the extent that it denied the change of venue and is vacated as to the remainder of the order as that Court should not have reached the issues. This case is remanded to that Court for it to grant the change of venue.

Jurisdiction is relinquished.