# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beaver Falls Municipal Authority :
:
v. : No. 626 C.D. 2020
: SUBMITTED: June 7, 2021
Maria S. Torrence, d/b/a :
Maria's School of Dance, :
Appellant :


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
           HONORABLE J. ANDREW CROMPTON, Judge (P)
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                     **FILED:  July 2, 2021**


Maria S. Torrence, d/b/a Maria's School of Dance, appeals from an order of the Court of Common Pleas of Beaver County (trial court) granting the summary judgment motion filed by Beaver Falls Municipal Authority and denying the summary judgment motion filed by Torrence.  This appeal involves the failure to pay for fire-suppression services, also known as stand-by fees, under the Municipality Authorities Act (MAA).[1]  We affirm.

The background of this matter is as follows.  Torrence has owned the property at issue, a 15,000-square-foot, one-story masonry building located at 1235 5th Avenue, New Brighton, PA, since the 1990s. (May 1, 2020, Trial Ct. Op. at 2.) In addition to Maria's School of Dance, the building houses a Family Dollar store pursuant to a lease with Torrence.  The building has a fire-suppression system involving sprinklers, which was installed in the 1960s during its original

---

[1] 53 Pa.C.S. §§ 5601-5623.

construction. (*Id.* at 3.) The system's functional operation is a term of the lease between Torrence and Family Dollar, with Torrence bearing the responsibility for paying the stand-by fee.[2] After paying the fee for over ten years, Torrence decided to stop payments in the fall of 2009 but for four nominal payments made in 2017 for a total of $2,652.47.[3] Subsequently, the Authority filed a municipal lien claim in the amount of $19,525.33 against the property for unpaid bills for fire-protection services for "the period commencing prior to December 31, 2013, and through the date of computation: November 9, 2018." (Nov. 9, 2018, Mun. Lien Claim at 1; Reproduced R. "R.R." at 5a.) The Authority reserved the right to modify the "amount upward to reflect any subsequent services rendered to [Torrence] after the computation date of November 9, 2018."[4] (*Id.*)

In June 2019, the Authority filed a rule to show cause why service to the property for water and fire suppression should not be suspended. The Authority asserted that Torrence paid the fire-suppression service charges until the fall of 2009, when she ceased payments but for the four payments made in 2017. (June 13, 2019, Rule to Show Cause, ¶ 7 and Ex. A; R.R. at 15a and 23a-24a.) Additionally, the Authority made averments as to its attempts to enter into a forbearance agreement with Torrence and her unwillingness to pursue a fire-protection service with a smaller diameter line. (*Id.*, ¶15; R.R. at 17a.) Accordingly, the Authority requested

---

[2] Torrence and Family Dollar use separately metered water for bathrooms, sinks, commodes, and water fountains. The bills for regular water usage have been paid without issue. (May 1, 2020, Trial Ct. Op. at 3.)

[3] In a supplemental opinion, the trial court corrected its initial statement that Torrence made no payments after 2009 by clarifying that she made several in 2017. From that, the trial court concluded that she made no payments from 2009 to 2017. (Aug. 25, 2020, Suppl. Trial Ct. Op. at 2.) In her answer to the rule to show cause, Torrence admitted that she made no payments after 2017.

[4] The trial court noted that the total of unpaid fees by Torrence now exceeds $24,000. (May 1, 2020, Trial Ct. Op. at 3.)

that the trial court issue a rule upon Torrence to show cause why fire protection and water services to the property should not be suspended for failure to pay or make accommodations to pay the amount due. (*Id*. at 5; R.R. at 18a.)

In the answer to the rule to show cause, Torrence admitted that she had not fully paid the stand-by fee and that the record of payments attached to the Authority's rule to show cause was accurate. (Aug. 2, 2019, Answer to Rule to Show Cause at 4; R.R. at 73a.) She averred that she made periodic payments after 2009 "while requesting some explanation of the method of calculating the fee and determining its legality and accuracy." (*Id*., ¶7; R.R. at 77a.) Additionally, she asserted that the stand-by fee was not delinquent and that she owed nothing because the fee was arbitrary, capricious, unreasonable, illegal, and a violation of her due process rights. (*Id*., ¶8; R.R. at 77a.) As for the proposed modification to the size of the line, Torrence averred that it "was cost prohibitive and would only address the stand-by fee going forward and would not address the past amount claimed to be due[.]" (*Id*., ¶12; R.R. at 78a.) Additionally, Torrence asserted that the Pennsylvania Public Utility Commission had jurisdiction over the matter. Accordingly, Torrence requested that the trial court refuse to exercise jurisdiction, declare that the stand-by fee was illegal and unreasonable, strike the lien on the property, void the balance claimed, and assess all costs against the Authority. (*Id*. at 10; R.R. at 79a.)

Subsequently, the trial court entered an order stating that it had subject-matter jurisdiction, that the issue pending before it was the reasonableness of the Authority's rate, and that Torrence bore the burden to establish the unreasonableness of the rate. (Aug. 14, 2019 Order at 1-2; R.R. at 84a-85a.) Both parties filed motions for summary judgment.

The Authority in its motion asserted that Torrence failed to establish via expert testimony that the rate was not uniform or unreasonable. Additionally, it

asserted that its witnesses' uncontradicted testimony established uniformity and reasonableness. James Riggio, the Authority's general manager, testified that the Authority has 110 fire suppression commercial customers and that it bills them at the same rate for a 6-inch line.[5] (Feb. 7, 2020, Mot. for Summ. J., ¶21(c); R.R. at 207a.) Robert Horvat, an Entech Engineering employee providing consulting services, testified that there are inherent difficulties in comparing the rates that the Authority charges with those that other authorities charge due to the large size of the Authority's system. (*Id.*, ¶21(e); R.R. at 209a.) He testified that the Authority services almost 20,000 customers, has lines running from Beaver Falls to Zelienople on the far east end and all the way south to Conway. He explained the need to have additional pressure and volume available to trigger and fuel the fire-suppression systems of the 110 commercial customers. He also referenced the need to have residual chlorine levels and sanitary conditions in the water being sourced for consumption and fire suppression. (*Id.*) Finally, the Authority commented that it was ironic that Torrence argued that the rate was unreasonable when she "failed to take any effort to investigate the utilization of a more efficient system or the replacement of the system itself." (*Id.*, ¶23; R.R. at 210a.)

Torrence in her motion alleged that there was no issue of material fact as to the absence of any basis for the Authority's rate determination because the Authority admitted in discovery that it had no understanding of the establishment of the original rate set in 1938 and simply had been applying rate increases since 1966. (Feb. 7, 2020, Mot. for Summ. J., ¶4; R.R. at 179a.) In support, Torrence pointed to the depositions of Riggio and Horvat. Consequently, Torrence averred that because the Authority could not provide a method of calculation for the stand-by fee and it

---

[5] When users within the same classification pay the same rate, the charge is uniform. *Patton-Ferguson Joint Auth. v. Hawbaker*, 322 A.2d 783, 786 (Pa. Cmwlth. 1974).

appeared to be nothing more than a carry-over of a number that was assigned in 1938, the rate was unreasonable and unenforceable. (Feb. 7, 2020, Br. in Supp. of Mot. for Summ. J. at 7; R.R. at 183a.)

The trial court granted the Authority's motion for summary judgment and denied Torrence's motion. In support, the trial court determined that it was unnecessary to address the merits of Torrence's argument that the Authority's rate was arbitrary and unreasonable because she failed to initiate a suit to challenge the rate when she stopped paying her bills. Accordingly, the trial court concluded that she did not meet her burden to prove that the Authority violated the MAA. Torrence's appeal to this Court followed.[6]

Section 5607(d)(9) of the MAA, 53 Pa.C.S. § 5607(d)(9), governs this appeal. Pursuant thereto, an authority has the following powers:

> **(d) Powers.--**Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, the following rights and powers:
>
> . . . .
>
> (9) To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the

---

[6] The entry of summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Marks v. Tasman*, 589 A.2d 205, 206 (Pa. 1991). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Our review of an order granting summary judgment involves only an issue of law. Hence, our review is plenary. *Id*.

5

> construction, improvement, repair, maintenance and operation of its facilities and properties . . . .

53 Pa.C.S. § 5607(d)(9).  Moreover, especially relevant here, Section 5607(d)(9) also addresses how ratepayers may challenge an authority's rates:

> *Any person questioning the reasonableness or uniformity of a rate fixed by an authority* or the adequacy, safety and reasonableness of the authority's services, including extensions thereof, *may bring suit against the authority in the court of common pleas* of the county where the project is located or, if the project is located in more than one county, in the court of common pleas of the county where the principal office of the project is located.

*Id*. (emphasis added).  The exclusive remedy for challenging the reasonableness of an authority's rates is with the trial court.[7]  *Northampton, Bucks Cnty., Mun. Auth. v. Bucks Cnty. Water & Sewer Auth*., 508 A.2d 605, 608 (Pa. Cmwlth. 1986).  In addition, ratepayers choosing to file suit challenging the reasonableness of a rate must continue to pay during the duration of the suit, albeit under protest.  *See Life*

---

[7] The party challenging the validity of the rate must prove that an authority abused its discretion in the rate-making process by assessing an unreasonable rate.  *Allegheny Ludlum Corp. v. Mun. Auth. of Westmoreland Cnty*., 659 A.2d 20, 24 n.6 (Pa. Cmwlth. 1995).  In assessing the reasonableness of a rate, "the trial court's scope of review is limited to determining whether there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system."  *Id*. at 26 (citation omitted).  "Whether a rate is reasonable is dependent upon whether it is reasonably proportional to the value of the service rendered."  *Id*. (citation omitted).  In that respect, an authority's rates "must have a reasonable relation to the value of the service rendered either as actually consumed or as readily available for use . . . ."  *Patton-Ferguson Joint Auth.*, 322 A.2d at 786.  In other words, an authority is not required to establish its rates solely upon services that are actually consumed.  *See Life Servs., Inc. v. Chalfont-New Britain Twp. Joint Sewage Auth.*, 528 A.2d 1038, 1041 (Pa. Cmwlth. 1987) (contribution fee imposed by the sewage authority was reasonably related to the value of the service rendered and the assumed use of 100 gallons per day per resident was not arbitrary).  Additionally, even if the trial court has a different opinion or judgment, it may not substitute judicial discretion for administrative discretion.  *Allegheny Ludlum Corp*., 659 A.2d at 26 (citation omitted).

6

*Servs., Inc.*, 528 A.2d at 1040 (personal care boarding home facility paid contribution fee based on an assumed consumption of 100 gallons per day per person under protest and then initiated action for refund of that payment in common pleas court pursuant to the MAA).

In the present case, even though the trial court initially afforded Torrence an opportunity to challenge the reasonableness of the rate and to assert alleged unreasonableness as a defense to non-payment of the stand-by fee, her arguments constituted an improper collateral attack on the rate in the municipal lien proceeding brought to collect payment for the services rendered under the established rate schedule. The only salient issue in the instant proceeding was whether the Authority properly charged Torrence for the services rendered under the established rate schedule. To challenge the reasonableness of the rate, Torrence was required to initiate a civil suit in accordance with Section 5607(d)(9) of the MAA, which she did not do, let alone continue to pay her bills during the litigation. Once the Authority fixed its rate and Torrence failed to challenge the reasonableness of that rate in a lawsuit legislatively prescribed for that purpose, the fixed rate was the only one that the Authority could charge. Consequently, the trial court did not err in declining to consider the merits of her arguments pertaining to the alleged unreasonableness of the rate.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

7

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beaver Falls Municipal Authority      :
     :
         v.      :    No. 626 C.D. 2020
     :
Maria S. Torrence, d/b/a      :
Maria's School of Dance,      :
         Appellant      :

# **O R D E R**

AND NOW, this 2nd day of July, 2021, the order of the Court of Common Pleas of Beaver County is hereby AFFIRMED.

 

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita